Application of the UNITED STATES of America, Petitioner,

v.

Alton LaPAGE, Respondent.

Application of the UNITED STATES of America, Petitioner,

v.

William Donald LaPAGE, Respondent.

Misc. Nos. 131, 132.

United States District Court,
N. D. New York.

Dec. 7, 1977.

Paul V. French, U. S. Atty., Syracuse, N. Y., for petitioners; Gustave J. DiBianco, Asst. U. S. Atty., Syracuse, N. Y., of counsel.

Robert H. Halliday, Potsdam, N. Y., for respondents.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

These two companion cases have come before this Court by way of a motion by the Government to have the two named defendants adjudged in civil contempt, and incarcerated, pursuant to 28 U.S.C. § 1826. The alleged contempt arises out of the defendants' refusal to produce records requested by a federal grand jury in subpoenas duces tecum addressed to them.

Defendant Alton LaPage was served with a grand jury subpoena duces tecum on October 18, 1977, ordering him to appear before a federal grand jury sitting in Syracuse, New York, on October 26, 1977, and to bring with him certain records pertaining to his cattle business during the period from January 1, 1975, to the time of the subpoena.[1] The second defendant, William Donald LaPage, was served on October 28, 1977, with a similar subpoena duces tecum requiring him to appear before the grand jury on November 9, 1977, and to bring with him records relative to his cattle business between January 1, 1975, and the time of the subpoena.[2] The defendants appeared as required, but refused to produce the records sought, claiming that the documents were privileged under the Fifth Amendment to the United States Constitution. The Government now seeks to have the defendants confined until such time as they are willing to comply with the subpoenas.

The records sought in the two subpoenas in issue are, without exception, business records kept and maintained by the defendants, both of whom are operating cattle businesses as sole proprietorships. Under ordinary Constitutional principles, the compelled production, by subpoena, of the private business records of a sole proprietorship, which records are in the custody of the business owner, violates the Fifth Amendment. *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *United States v. Slutsky,* 352 F.Supp. 1105 (S.D. N.Y.1972); see also *Sigety v. Hynes,* 38 N.Y.2d 260, 379 N.Y.S.2d 724, 342 N.E.2d 518 (1975), cert. den. 425 U.S. 974, 96 S.Ct. 2174, 48 L.Ed.2d 798 (1976). The Fifth Amendment violation arises, not because

1. The following records were listed in the subpoena:

   1. List of full time and part time employees showing their duties and length of employment with addresses and dates of birth.
   2. Cattle purchases—
      names; addresses; dates; number of cows; identification of cows; amounts paid for cattle purchased and to whom paid.
   3. Cattle consignments—
      names and addresses of consignors; number of cows consigned; dates of consignment; identification of cows consigned.
   4. Cattle sold—
      names and addresses of purchasers; dates of purchases; number and identification of cows purchased.
   5. Trucking, transfer, keeping—
      names and addresses of those for whom cattle were picked up, transported, transferred, kept, if not consigned, purchased or sold; including dates, numbers, identification of cows; place of pick up; name of driver; and origin of cows.

   6. Financial records—All limited to the time period January 1, 1975 to the present.
      cancelled checks and check stubs; deposit slips; general ledgers; general journals; cash disbursements journals; vouchers; invoices; paid bills, billings; bank statements; payrol [sic] records; accounts payable ledgers; accounts receivable ledgers; telephone company statements of calls and telegrams; contracts or agreements to truck; take on consignment; purchase or sell cattle.
   7. Records of importation—
      all documents, notes and communications in regard to importation of cattle from Canada.
   8. All memoranda, intra-office or otherwise; notes, formal or informal; and, all correspondence.
   The Government has since withdrawn request number 8.

2. The list of records sought is the same as that accompanying the subpoena to defendant Alton LaPage. See footnote 1, *supra.*

the defendant has made the records which are under subpoena, but instead because to require him to produce them is, in essence, the equivalent of compelling him to admit their existence, and, inferentially at least, to authenticate them. *Andresen v. Maryland,* 427 U.S. 463, 473–474, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Couch v. United States,* 409 U.S. 322, 330–331, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).

An exception, commonly denoted as the "required records exception", has evolved with respect to the Fifth Amendment privilege against the compelled production of private papers. This exception is generally attributed to the Supreme Court's decision in *Shapiro v. United States,* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), although it has its roots in dictum contained within the Court's opinion in *Wilson v. United States, supra* 221 U.S. at 380,[3] 31 S.Ct. 538, and later reaffirmed in the decision in *Davis v. United States,* 328 U.S. 582, 589–590, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946).[4] The *Shapiro* rule, which has been criticized as being one whose logic is difficult to fathom, is generally said to apply to lawfully compelled production of private records required, by a governmental agency, to be maintained, as long as 1) the records are of a type normally kept by the person under subpoena, 2) the requirement that they be kept is essentially regulatory, and 3) the records have some "public aspects" to them. *Grosso v. United States,* 390 U.S. 62, 67–68, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); *Shapiro v. United States, supra* 335 U.S. at 33, 68 S.Ct. 1375; *In re Grand Jury Subpoena to Custodian of Records, Mid-City Realty Company,* 497 F.2d 218 (6th Cir. 1974), cert. den. 419 U.S. 1009, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); *United States v. Silverman,* 449 F.2d 1341 (2d Cir. 1971), cert. den. 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972); [5] *United States v. Kaufman,* 429 F.2d 240 (2d Cir. 1970), cert. den. 400 U.S. 925, 91 S.Ct. 185, 27 L.Ed.2d 184 (1970); *Sreter v. Hynes,* 419 F.Supp. 546 (E.D.N.Y.1976); 8 Wigmore on Evidence § 2259(c) (McNaughton Rev.).

▪ Most of the records now sought by the Government are of the type required to be kept by a licensed New York cattleman. 61 N.Y.C.R.&R. § 61.1 et seq.[6] Those rules, enacted by the New York Department of Agriculture and Markets pursuant to the authority vested in it by New York Agricul-

---

**3.** The *Wilson* case was ultimately decided upon the basis that the defendant, a corporation, being a quasi-public entity, was not shielded by the Fifth Amendment privilege against self-incrimination. *Wilson v. United States, supra,* 221 U.S. at 384, 31 S.Ct. 538.

**4.** The facts in *Davis* are arguably distinguishable from those of an ordinary required records case, inasmuch as the records sought therein, viz. gas rationing coupons, were owned by the federal government, albeit possessed by private citizens.

**5.** *Silverman,* a case upon which the Government relies, is distinguishable from that at bar, since the records in issue therein were in the custody of the clerk of the Appellate Division of the New York State Supreme Court, rather than the person allegedly incriminated by them. As such, the subpoena in that case involved no testimonial compulsion of the defendant therein. Contrast *Fisher v. United States, supra.*

**6.** Section 61.2 of the N.Y.C.R.&R. provides that records required to be kept by virtue of section 61.1 of that part should include the following information:

(a) all tag or other identifying numbers carried by or assigned to the animal at the time of purchase by or consignment to the permit holder and at the time of sale by the permit holder, whether acting as principal, broker, auctioneer, auction market operator or other intermediary or agent;

(b) all brand and tattoo numbers carried by the animal except vaccination tattoos;

(c) the name and address of the person who consigned the animal for sale by the permit holder or from whom the animal was purchased by the permit holder or, if such animal was purchased at an auction, the name and address of the auction market; also the date of such consignment or purchase;

(d) the name and address of the person to whom the animal was sold by the permit holder acting as principal, or as broker, auctioneer, auction market operator or other intermediary or agent, and the name and address of any auction market to whom the animal was consigned by the permit holder, and the date of such sale or consignment;

(e) the breed, sex, color and approximate age of each animal;

ture and Markets Law §§ 18 and 90-g, were promulgated, quite obviously, to aid the department in controlling infectious and communicable disease among domestic animals within the state. See New York Agriculture and Markets Law § 90-a. Consequently, the rules do not suffer from the infirmity found in *United States v. Grosso, supra,* and *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), wherein record-keeping regulations aimed primarily at exposing crime occurring on an ongoing basis were found not to fall within the *Shapiro* required records exception to the Fifth Amendment.

Item numbers 2, 3, 4, 5, and 7 listed in Schedule A, which is appended to the two subpoenas in issue, appear to qualify, under *Shapiro,* as records required by a governmental agency to be maintained by the defendants. Moreover, they are of the nature of those records generally maintained by cattlemen, and possess certain public aspects by virtue of the foregoing regulations and the policies behind them. The defendants are therefore ordered to produce the records referred to in those portions of the subpoena which have already been enumerated.

■ The Government claims that, by appearing and asserting their Fifth Amendment privilege in response to the subpoenas duces tecum, the defendants have opened themselves to an immediate adjudication of civil contempt under 28 U.S.C. § 1826. Of course the Government would not, and could not, argue that a citizen under grand jury subpoena and without a grant of immunity may not assert his Fifth Amendment privilege. *Hale v. Henkel,* 201 U.S. 43, 74, 26 S.Ct. 370, 50 L.Ed. 652 (1906). Likewise, no one can doubt that any question of privilege raised by a witness under subpoena should generally be resolved by the courts. *Nixon v. Sirica,* 159 U.S.App. D.C. 58, 487 F.2d 700 (1973); *United States v. Olin Mattieson Chemical Corp.,* 36 F.R.D. 18 (S.D.N.Y.1964).

(f) the dates and laboratory accession numbers of any tests required for sale or movement of each animal; and

(g) the identifying number and date of issuance of any exemption permit for slaughter

■ This Court does not believe that a witness under grand jury subpoena, whether it be duces tecum or ad testificandum, should bear the onus of bringing a motion, prior to appearing on the subpoena, in order to raise a Fifth Amendment claim. Nothing contained within the rules and cases cited by the Government, all of which deal primarily with unreasonable or oppressive subpoenas, is to the contrary.

■ This Court therefore denies the Government's motion for an order of civil contempt, without prejudice, as being premature. The defendants are ordered to surrender, at a time and place to be designated by the United States Attorney, all of their personal and business records which are of the type listed in item numbers 2, 3, 4, 5, and 7 in Schedule A attached to the subpoenas. If the defendants fail to comply with this Order, they will then be subject to a possible finding of civil contempt, pursuant to 28 U.S.C. § 1826 and F.R.Crim. Proc. Rule 17(g).

It is so ordered.

or other purpose issued for any horse pursuant to Section 95-c of the Agriculture and Markets Law or federal law.