THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* ARNOLD BICKHAM, M.D., Respondent-Appellant.

First District (3rd Division)    No. 79-339

Opinion filed November 19, 1980.—Rehearing denied December 29, 1980.

Mitchell, Hall, Jones & Black, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Miss PRESIDING JUSTICE McGILLICUDDY delivered the opinion of the court:

On January 26, 1979, the Circuit Court of Cook County found Dr. Arnold Bickham in contempt of court for failure to comply with two subpoenas duces tecum issued by the November 1978 grand jury. The court ordered Dr. Bickham incarcerated until he purged himself of contempt. The order of incarceration was stayed pending Dr. Bickham's appeal of this order.

The grand jury issued the two subpoenas requesting that Dr. Bickham, as president of the Water Tower Reproductive Center, Ltd., (Water Tower) produce various medical records of 63 women, including those of Sherry Emry. Water Tower filed a petition to quash the subpoenas asserting that the medical records were the personal property

of Dr. Bickham. Water Tower further claimed that the documents were protected by the physician-patient privilege.

Subsequently, Dr. Bickham was presented with a "Waiver of Doctor/Patient Privilege" executed by the administratrix of the estate of Sherry Emry. The waiver authorized Water Tower to release all materials concerning the treatment of Emry to any duly authorized investigative body of the State of Illinois.

Following a hearing on the petition to quash the subpoenas, the court ordered Dr. Bickham to produce the records for an *in camera* inspection in order to determine whether the documents were subject to any privilege. Dr. Bickham refused to comply with this order and failed to produce the records, which he claimed were his personal property. The State filed a petition for a rule to show cause why Dr. Bickham should not be held in contempt of court.

The court conducted an evidentiary hearing to determine whether the records were the personal property of Dr. Bickham or of Water Tower. Mindy Trossman, an investigator for the Better Government Association, testified that she worked at Water Tower from August 26 to October 21, 1978, as a nurse's aid and counselor. Her responsibilities included assisting the patients and doctors and completing sections of the patients' charts.

Trossman testified that patients who came to Water Tower for a pregnancy termination were given an eight-page booklet with the name of Water Tower on the cover. This booklet was the patient's chart. This booklet was not given to Dr. Bickham's private patients who visited the facility.

In addition to Dr. Bickham, four other doctors performed abortions at Water Tower and used the patient chart. Trossman was instructed by a medical assistant to indicate on the chart that Dr. Bickham was the surgeon, regardless of which doctor performed the abortion. When another doctor was the surgeon, he would leave the physician's signature space blank and initial the back of the chart.

Trossman also testified that Dr. Bickham examined his private patients in a room which did not contain abortion equipment. The charts of these patients were hung on the door of the examining room and no other doctor would enter the room. The private patients received a different receipt than the one given to the abortion patients.

Michael T. Berger, the manager of the professional review section of the Department of Public Aid, testified on behalf of Dr. Bickham. His section, which conducted audits of participants in the Medicaid program, was auditing Dr. Bickham in connection with services he performed at a second facility, Bio-Genetics.

Berger testified that Dr. Bickham had informed the department that

he was unable to produce certain records requested in connection with the audit because they were in the custody of Bio-Genetics. The department rejected this claim and considered that the records belonged to Dr. Bickham. Berger further stated that if a doctor is unable or refuses to produce the records, the department will take administrative action to terminate his participation in the Medicaid program.

At the conclusion of the hearing the court ruled that the records belonged to Water Tower and must be produced before the grand jury. On January 26, 1979, when Dr. Bickham appeared before the grand jury and refused to turn over the subpoenaed documents, he was held in contempt of court.

The first issue raised on appeal is whether the trial court's finding that the subpoenaed records belonged to Water Tower was erroneous. Dr. Bickham concedes that the subpoenaed records were located at the Water Tower facility, an ambulatory surgical treatment center licensed by the Illinois Department of Public Health. He contends that because the facility is not required to maintain medical records, custom dictates the conclusion that the medical records are his personal property.

The statement that Water Tower is not required to keep medical records is inaccurate. The Ambulatory Surgical Treatment Center Act defines such a center as "any facility in which a medical or surgical procedure is utilized to terminate a pregnancy, irrespective of whether the facility is devoted primarily to this purpose." (Ill. Rev. Stat. 1977, ch. 111½, par. 157—8.3(A).) In addition to other requirements, the statute specifically requires that a license shall be issued only to a facility which maintains adequate medical records for each patient. Ill. Rev. Stat. 1977, ch. 111½, par. 157—8.6.

The evidentiary hearing disclosed that the records of abortion patients were processed differently than the records of Dr. Bickham's private patients whom he treated at the facility. The eight-page booklet which constituted the medical record of an abortion patient was completed in part by the patient, in part by a counselor and in part by the doctor who performed the abortion. Although Dr. Bickham was always indicated as the surgeon in the records, four other doctors performed abortions at the facility.

In contrast, Dr. Bickham kept different records for his private patients and examined these patients in rooms into which no other doctor entered. The abortion patients and the private patients did not receive the same form for a receipt.

■■ We believe that the evidence strongly supports the trial court's conclusion that the subpoenaed records belonged to Water Tower. The fact that the Department of Public Aid holds Dr. Bickham responsible for providing it with records, in connection with an audit of services for

which they pay him, does not render the records his personal property. Our holding that the medical records are the property of Water Tower prevents Dr. Bickham from invoking the fifth amendment privilege against self-incrimination. An individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally. (See *Bellis v. United States* (1974), 417 U.S. 85, 40 L. Ed. 2d 678, 94 S. Ct. 2179, and cases cited therein.) This rule applies even when the subpoenaed corporate official is the sole owner or alter ego of the corporation. *United States v. Rosenstein* (2d Cir. 1973), 474 F.2d 705.

■■ The second issue raised on appeal is whether Dr. Bickham can assert the physician-patient privilege to justify his refusal to produce the subpoenaed medical records. Although no such privilege existed at common law, our legislature has protected from disclosure certain information obtained by a physician in his professional relationship with a patient. (*Geisberger v. Willuhn* (1979), 72 Ill. App. 3d 435, 437, 390 N.E.2d 945; Ill. Rev. Stat. 1977, ch. 51, par. 5.1.) This statute provides that "[n]o physician or surgeon shall be permitted to disclose any information he may have acquired in attending any patient in a professional character, necessary to enable him professionally to serve such patient, * * * ." There are, however, seven exceptions to this privilege, three of which are pertinent to this appeal:

> "(2) in actions, civil or criminal, against the physician for malpractice, (3) with the expressed consent of the patient, or in case of his death or disability, of his personal representative * * * (6) in any criminal action where the charge is either murder by abortion, attempted abortion or abortion * * * ." Ill. Rev. Stat. 1977, ch. 51, par. 5.1.

In the instant case the personal representative of the estate of Sherry Emry expressly consented in writing to the release of the decedent's medical records. Consequently, Dr. Bickham could not assert the privilege and was properly held in contempt of court for refusing to produce her records for inspection by the grand jury.

The more difficult question is whether Dr. Bickham can refuse to produce the records of the 62 women who have not waived the privilege. The State argues that the subpoenas state that Dr. Bickham must produce the records pursuant to the investigation of a complaint made before the grand jury. It asserts that obviously the investigation is a criminal proceeding against Dr. Bickham and points out that one cannot claim the privilege in a criminal action against a physician for malpractice or in a criminal action for abortion.

■■ Although we would agree that it is a reasonable assumption that the

grand jury is investigating some aspect of Dr. Bickham's medical practice, there is no evidence in the record of the nature or subject of the investigation. The subpoenas merely assert that a complaint was made before the grand jury against "John Doe." At no time during the trial court hearings on the motion to quash was the purpose of the investigation revealed. We do not see how we can presume that there is a criminal action against Dr. Bickham for malpractice or abortion without any evidence of this fact. We conclude that neither of these two exceptions is applicable in the instant case, and, therefore, Dr. Bickham can assert the privilege on behalf of the 62 patients.

■■ The State also argues that we should not permit Dr. Bickham to invoke a privilege which was created for the benefit of the patient rather than the doctor in order to impede the investigation.[1] Although it may appear that Dr. Bickham is using the privilege as a shield to hide possible criminal conduct, we cannot create an additional exception to the privilege.[2] In *In re Westland* (1976), 48 Ill. App. 3d 172, 176-77, 362 N.E.2d 1153, the State argued that an additional exception to the psychiatrist-patient privilege should be created when the best interests of a child are at stake. The court held that:

> "The creation of a statutory privilege is a legislative balancing between relationships on the one hand, which society thinks should be fostered through the shield of confidentiality, and the interests, on the other, served by disclosure of the information in a court of law. Here the legislature has determined that balancing and its judgment is that, except for limited purposes, there is more value to encouraging and sustaining this particular kind of relationship. If a new balance is to be struck, it is for the legislature to strike it—not the court." 48 Ill. App. 3d 172, 176-77.

Moreover, the purpose of the privilege is to encourage free disclosure between the physician and the patient and to protect the patient from the embarrassment and invasion of privacy which disclosure would entail. (McCormick, Evidence §98, at 212-13 (2d ed. 1972).) In the instant case the 62 women most certainly obtained an abortion with the expectation that this information would remain confidential. Disclosure of this infor-

---

[1] Many commentators criticize the use of the privilege under any circumstances for obstructing the needs of justice. See McCormick, Evidence §105, at 223-28 (2d ed. 1972); 8 Wigmore, Evidence §2380a, at 828-32 (McNaughton rev. 1961); Chafee, *Privileged Communications: Is Justice Served or Obstructed by Closing the Doctor's Mouth on the Witness Stand?* 52 Yale L.J. 607 (1943).

[2] The legislature could have created an exception applicable to the instant case. For example, under California law the privilege cannot be invoked in a criminal proceeding. (Cal. Evidence Code §998 (West 1966).) North Carolina's statute provides that a court may compel disclosure of privileged information if necessary for the proper administration of justice. N.C. Gen. Stat. §8—53 (1969).

mation, even within the secrecy of the grand jury proceeding, could result in incalculable embarrassment to the women and serious damage to their personal, business and family relationships.

The State has the names of and information concerning the 62 women who received abortions during the period Trossman worked at Water Tower. If the State obtains a waiver of privilege from these women, Dr. Bickham can be subpoenaed by the grand jury and compelled to produce their medical records.

For the foregoing reasons the judgment of the Circuit Court of Cook County holding Dr. Bickham in contempt of court for refusing to produce the medical records of Sherry Emry is hereby affirmed.

Affirmed as modified.

McNAMARA and SIMON, JJ., concur.