THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* RICHARD A. HERBERT, M.D., Respondent-Appellant.

First District (2nd Division)   No. 81—1798

Opinion filed July 20, 1982.

James I. Marcus, of Chicago (Williams & Marcus, Ltd., of counsel), for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Michael B. Weinstein and Michael J. Brennan, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE DOWNING delivered the opinion of the court:

Respondent Richard A. Herbert, M.D., a physician licensed to practice medicine in the State of Illinois, was held in contempt of court for failure to comply with a *subpoena duces tecum* issued by the Cook County grand jury seeking production of certain medical records. In this court, and previously in the circuit court, respondent contends that the material requested in the subpoena is protected by both the self-incrimination clause of the fifth amendment and the physician-patient privilege.

The Cook County grand jury, in an investigation conducted by the Illinois Attorney General, issued a subpoena naming respondent as a target of the grand jury investigation and requested production of "any and all original records of treatment, examination, prescriptions, and visits which were generated and/or acquired by [respondent] for the period of January 1, 1979 through and including December 31, 1979, for those patients whose names and dates of birth are listed on the attached Rider *** who were Public Aid recipients and for whom [respondent] billed under the Illinois Medicaid Program of the State of Illinois." The rider listed 46 names.

Subsequently, agents from the Illinois Department of Law Enforcement (IDLE) obtained the signatures of all persons listed on the rider on the following form, entitled "Authorization for Release of Medical Information":

> "I, _____, do hereby authorize full disclosure of all medical records concerning myself and minor children in my custody to any duly authorized agent of the Office of the Attorney General of the State of Illinois, or the Illinois Department of Law Enforcement, whether the said records are of a private, public, or confidential nature.
>
> The intent of this authorization is to give my consent for full and complete disclosure of medical treatment that may have been performed by or may pertain to services rendered to myself, minor children in my custody by hospitals, clinics, physicians, dentists, and the U.S. Veteran's Administration.
>
> I have read and fully understand the contents of this 'Authorization for Release of Medical Information.' "

The two agents who obtained the signatures testified at the contempt hearing in the circuit court that they read and explained the form to each person who signed it, and that all persons signed the authorization in the presence of the agents. Although counsel for respondent was granted a continuance so that he could have an opportunity to call witnesses regarding the authorization forms, none testified.

The circuit court found respondent in contempt of court and ordered him incarcerated until he purged himself of contempt. The order of incarceration was stayed pending appeal.

## I

Respondent initially contends that the self-incrimination clause of the fifth amendment protects him from the disclosure sought by the subpoena. The fifth amendment to the United States Constitution pro-

vides, in pertinent part, "[n]o person \*\*\* shall be compelled in any criminal case to be a witness against himself." This clause is applied to the States through the fourteenth amendment. (*Malloy v. Hogan* (1964), 378 U.S. 1, 8, 12 L. Ed. 2d 653, 659-60, 84 S. Ct. 1489, 1493-94.) The State argues that the "required records" exception to that clause applies here, and thus respondent is not protected by the fifth amendment. The circuit court, apparently holding that the "required records" exception applied, held that respondent could not assert the fifth amendment privilege.

Initially, we note that the fifth amendment protects the business records of a sole proprietor from compulsory disclosure to the grand jury. (*Bellis v. United States* (1974), 417 U.S. 85, 87-88, 40 L. Ed. 2d 678, 683, 94 S. Ct. 2179, 2182-83.) Respondent conducted his practice as a sole proprietor. The required records exception to the fifth amendment was first recognized in *Shapiro v. United States* (1948), 335 U.S. 1, 92 L. Ed. 1787, 68 S. Ct. 1375, and refined in *Grosso v. United States* (1968), 390 U.S. 62, 67-68, 19 L. Ed. 2d 906, 912, 88 S. Ct. 709, 713. Essentially, the exception holds that where an individual is required by the government to keep records, those records are subject to disclosure if the following three factors exist: (1) the purpose of the record keeping requirement must be essentially regulatory; (2) the records must be of a kind customarily kept; and (3) the records themselves must have assumed public aspects.

The State contends that the records requested by the subpoena are required to be kept by the statutes and regulations governing the operation of the Medicaid system in Illinois. The State further contends that these records satisfy the requirements of *Grosso*.

The rules and regulations of the Illinois Department of Public Aid (DPA) must satisfy minimum Federal standards described in title XIX of the Social Security Act, commonly referred to as Medicaid. The Federal records requirements of the Social Security Act (42 U.S.C.A. sec. 1396(a) (1982 Supp.)) state in relevant part:

"(a) A State plan for medical assistance must—
\* \* \*

(27) provide for agreements with every person or institution providing services under the State plan under which such person or institution agrees (A) to keep such records as are necessary fully to disclose the extent of the services provided to individuals receiving assistance under the State plan, and (B) to furnish the State agency or the Secretary with such information, regarding any payments claimed by such person or institution for providing services under the State plan, as the State

agency or the Secretary may from time to time request \*\*\*."

The Federal requirement is implemented through section 5—5 of the Illinois Public Aid Code, which provides in part:

"All dispensers of medical services shall be required to maintain and retain business and professional records sufficient to fully and accurately document the nature, scope, details and receipt of the health care provided to persons eligible for medical assistance under this Code, in accordance with regulations promulgated by the Illinois Department. The rules and regulations shall require that proof of the receipt of prescription drugs, dentures, prosthetic devices and eyeglasses by eligible persons under this Section accompany each claim for reimbursement submitted by the dispenser of such medical services. \*\*\*" Ill. Rev. Stat. 1979, ch. 23, par. 5—5.

The Department of Public Aid has promulgated the following regulation:

"Sec. 111 *Requirement*
Requirements for providers approved for participation include but are not limited to the following:

\* \* \*

(11) Maintenance and retention of business and professional records sufficient to fully and accurately document the nature, scope and details of the health care provided." Medical Assistance Handbook, section I, ch. 100, sec. 111(11).

Finally, DPA form 132, which a physician submits to the Department for payment contains the following certification: "I hereby agree to keep such records as are necessary to disclose fully the extent of services provided to individuals under Title XIX of the Social Security Act and to furnish information regarding any payments claimed as the State Agency may request." Respondent filed a number of these forms with the Department and received payment for services rendered.

■ It is thus obvious that respondent was required to maintain a certain type of record by virtue of his participation in the Medicaid program. There is no evidence in the record that the records sought by the subpoena were not required to be maintained under the Medicaid program. We therefore conclude that the subpoena seeks the production of records which are required to be maintained, and therefore are required records.

Once this initial question is answered, we must determine whether the three-pronged test of *Grosso* is satisfied. (See *People v. Mileris* (1981), 103 Ill. App. 3d 589, 594, 431 N.E.2d 1064.) If this test is sat-

isfied, then the "required records" exception applies. Respondent concedes that his medical records are of a type customarily kept by him, but vigorously contends that the other two prongs are not satisfied.

■ Next, we consider whther the purpose of the record keeping requirement is essentially regulatory. Respondent argues that because his records are sought by a grand jury investigating him for possible criminal violations, the reason for which his records are sought is not regulatory. Respondent is improperly attempting to shift the focus away from the purpose for which the records are required to be kept to the purpose for which they are sought. The purpose of the record keeping requirement here is to monitor the operation of the Medicaid program, not to catch criminals. This contrasts to the wagering reporting requirement struck down in *Marchetti v. United States* (1968), 390 U.S. 39, 19 L. Ed. 2d 889, 88 S. Ct. 697. We cannot say that the class of all doctors participating in the Medicaid program is a " 'selective group inherently suspect of criminal activities.' " *Marchetti v. United States* (1968), 390 U.S. 39, 57, 19 L. Ed. 2d 889, 903, 88 S. Ct. 697, 707; *Albertson v. Subversive Activities Control Board* (1965), 382 U.S. 70, 15 L. Ed. 2d 165, 86 S. Ct. 194; *In re Grand Jury Proceedings* (5th Cir. 1979), 601 F.2d 162, 168.

Our conclusion that this record keeping requirement is essentially regulatory is buttressed by reference to *In re Grand Jury Proceedings* (5th Cir. 1979), 601 F.2d 162; *United States v. LaPage* (N.D.N.Y. 1977), 441 F. Supp. 824, and *United States v. Cubeta* (D. Conn. 1979),369 F. Supp. 242. In each of these cases, required records were used against the defendant in criminal proceedings. However, the purpose of the record keeping requirement was, in each case, essentially regulatory. (*In re Grand Jury Proceedings* (customs regulation); *LaPage* (health and disease control); *Cubeta* (gun control).) Accordingly, we hold that this prong of the *Grosso* test is satisfied.

■ The final prong which must be satisfied by the State is that "the records themselves must have assumed 'public aspects' which render them at least analogous to public documents.") *Grosso v. United States* (1968), 390 U.S. 62, 68, 19 L. Ed. 2d 906, 912, 88 S. Ct. 709, 713.) Since these records may be inspected by officials of the Department of Public Aid for documentation of claims and analysis of the operation of the Medicaid system, we conclude that they have assumed "public aspects." See *People v. Mileris* (1981), 103 Ill. App. 3d 589, 594; *United States. v. Cubeta* (D. Conn. 1974), 369 F. Supp. 242, 244.

■ In summary, we hold that respondent cannot assert the privilege against self-incrimination because of application of the "required

records" exception to that privilege, provided that the records requested by subpoena are limited to those required to be maintained by law. With this proviso, we affirm the holding of the circuit court.

## II

Respondent also contends that the medical records are protected from disclosure by the physician-patient privilege (Ill. Rev. Stat. 1981, ch. 110, par. 8—802),[1] which provides in relevant part: "No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve such patient, except only *** (3) with the expressed consent of the patient *** ."

The State contends that execution of the forms entitled "Authorization for Release of Medical Information" by the patients constituted waiver of the privilege. Respondent argues that these forms do not constitute sufficient waivers because they are overly general and broad in scope. Resolution of this issue requires the accommodation of two competing interests: the interest of the patient in confidentiality, and the interest of the public in the grand jury obtaining all relevant information. See *People v. Bickham* (1982), 89 Ill. 2d 1, 5-6, 431 N.E.2d 365; see generally *Parkson v. Central DuPage Hospital* (1982), 105 Ill. App. 3d 850, 854, 435 N.E.2d 140.

The General Assembly has recognized the patient's interest in maintaining confidentiality in dealings with a physician by its creation of the physician-patient privilege. (*People v. Bickham* (1982), 89 Ill. 2d 1, 6.) The purpose of the privilege is to encourage free disclosure between the physician and the patient, and to protect the patient from the embarrassment and invasion of privacy that disclosure would entail. (*People v. Bickham* (1980), 90 Ill. App. 3d 897, 901, 414 N.E.2d 37, *aff'd* (1982), 89 Ill. 2d 1, 431 N.E.2d 365.) The privilege exists for the protection of the patient. 81 Am. Jur. 2d *Witnesses* sec. 231 (1976).

In conflict with the patient's interest in confidentiality is the public's interest, recognized by the courts, in "maintaining the breadth of the grand jury's power to conduct investigations regarding criminal violations." (*People v. Bickham* (1982), 89 Ill. 2d 1, 5-6, citing *People v. Dorr* (1970), 47 Ill. 2d 458, 462, 265 N.E.2d 601, *cert. denied* (1971), 402 U.S. 929, 28 L. Ed. 2d 863, 91 S. Ct. 1527.) Generally,

---

[1]Prior to July 1, 1982, this statutory provision was codified as ch. 51, par. 5.1. No substantive change was made by the recodification.

" 'the public ... has a right to every man's evidence.' " (*Branzburg v. Hayes* (1972), 408 U.S. 665, 688, 33 L. Ed. 2d 626, 644, 92 S. Ct. 2646, 2660.) The purpose of the grand jury's investigation is not only to cause the prosecution of the guilty, but also to protect the innocent from unfounded criminal prosecutions. (*Branzburg v. Hayes* (1972), 408 U.S. 665, 686-87, 33 L. Ed. 2d 626, 643, 92 S. Ct. 2646, 2659.) Society's interests are thus best served by a thorough and broad investigation. The grand jury must pursue all available clues and examine all witnesses. The "investigation may be triggered by tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the grand jurors." (*Branzburg v. Hayes* (1972), 408 U.S. 665, 701, 33 L. Ed. 2d 626, 651, 92 S. Ct. 2646, 2667.) The investigation must of necessity be broad in scope.[2]

We must conclude, in light of these principles, that the forms entitled "Authorization for Release of Medical Information" constituted valid waivers of the physician-patient privilege in accordance with section 8—802(3) of the Code of Civil Procedure. (Ill. Rev. Stat. 1981, ch. 110, par. 8—802(3).) These authorizations were read and explained to each patient, and were signed in the presence of IDLE agents who testified in court and were subject to cross-examination by respondent. Respondent was unable to produce any evidence to suggest that the authorizations were anything but intelligent and voluntary waivers of the physician-patient privilege. A contrary ruling would unduly restrict the broad powers of the grand jury. Accordingly, the circuit court correctly held that the physician-patient privilege did not protect from disclosure the medical records sought by the subpoena.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.

---

[2]For a discussion of the competing interest, see our decision *People v. Florendo* (1981), 95 Ill.App. 3d 601, 420 N.E.2d 506, *appeal allowed* (1982), 88 Ill. 2d 552.