*In re* JANUARY 1986 GRAND JURY No. 217 (The People of the State of Illinois, Plaintiff-Appellee, v. Jack Bernstein *et al.*, Defendants-Appellants).

First District (3rd Division)   No. 86—1002

Opinion filed April 15, 1987.—Rehearing denied May 29, 1987.

446

Engerman & Erlich, Ltd., of Chicago (Carlo E. Poli, Allen C. Engerman, Barry A. Erlich, and Jeffrey A. Brown, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Mark L. Rotert and Gary Schwartz, Assistant Attorneys General, of Chicago, of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County granting the State's motion for a rule to show cause which holds appellants in contempt and imposes a fine of $50 for each day they fail to produce documents sought by a grand jury *subpoena duces tecum*. The trial court stayed the order pending appeal. On appeal, appellants challenge the subpoena and production of the documents based upon their fifth amendment privilege against self-incrimination. Appellants claim the immunity granted them pursuant to the Illinois immunity provision is insufficient to protect their fifth amendment rights. They also maintain that the grand jury subpoena violates the fourth amendment prohibition against unreasonable search and seizure and the fourteenth

amendment due process clause.

The State began a grand jury investigation of appellants Jack and Wanda Bernstein personally and d/b/a Milwaukee Products for the alleged failure to pay the proper amount of retailer occupation taxes and income taxes for the years 1982 through 1984. The grand jury issued a *subpoena duces tecum* to the Bernsteins seeking the following documents: (1) any retained copies of State and Federal tax returns including schedules and attachments; (2) all cancelled checks; (3) all bank statements; (4) all inventory records; (5) all sales and purchase invoices; (6) all other records pertaining to any and all sales and purchases of goods by or from the business known as Milwaukee Products for years 1982, 1983, and 1984; and (7) all written materials provided by the Bernsteins to their accountant for the preparation of their tax returns for those three years.

The Bernsteins appeared before the grand jury and refused to answer questions or produce the requested documents asserting their fifth amendment privilege against self-incrimination. As a result of the Bernsteins' refusal to produce the documents, the court granted the State's request for immunity for both Bernsteins under the Illinois immunity provision. (Ill. Rev. Stat. 1985, ch. 38, par. 106 *et seq.*) The immunity order granted the Bernsteins "production immunity" for admitting that the records and documents which are not required to be kept by statute or regulation (1) exist, (2) are the ones sought in the subpoena, and (3) are in the Bernsteins' custody. The immunity order also specified that no immunity was being granted with respect to any crimes which the contents of the documents might reveal were committed, nor was any immunity granted with respect to the production of any records or documents required to be kept by law.

After granting immunity to the Bernsteins, the State continued to assert that it could prosecute the Bernsteins for sales tax fraud and income tax fraud for 1982 through 1984. The Bernsteins continued to assert their fifth amendment privilege claiming that their privilege was not adequately protected by the court's grant of immunity. As a result, the State sought a rule to show cause why the Bernsteins should not be held in contempt of court. After a hearing, the trial court issued the rule to show cause and fined the Bernsteins.

The State has divided the documents they seek into two types, those documents required to be kept by law and those documents or records voluntarily kept by the Bernsteins. The State only sought immunity for the records which were voluntarily kept and argues that all records which are required to be kept by law are exempt from the fifth amendment by virtue of the "required records doctrine."

We will first address the Bernsteins' challenge to the immunity granted to them for the production of the voluntarily kept records. The voluntary records referred to by the State are the retained copies of the Bernsteins' Federal and State income tax returns, including all schedules and attachments for the years 1982 through 1984, all written materials provided by the Bernsteins to their accountant for the preparation of their returns in those years, and all voluntarily kept records pertaining to purchases and sales by Milwaukee Products. We note that our holding in *In re October 1985 Grand Jury No. 746* (1987), 154 Ill. App. 3d 288, compels production by the Bernsteins' accountant of the Bernsteins' tax returns and materials provided to the accountant. This previous ruling obviates the need, for purposes of this case, to compel production of these records from the Bernsteins. We will, however, continue our discussion of the protection to be afforded voluntarily kept records pertaining to purchases and sales. In addition, we find that the Bernsteins' cancelled checks and bank statements properly fall into the category of voluntarily kept records. The State mischaracterized these records in the trial court as required to be kept pursuant to regulation. Because they are not required to be kept by law, the order granting immunity extends to the production of the Bernsteins' cancelled checks and bank statements.

■■ The fifth amendment privilege against self-incrimination is applicable to State court proceedings. And, article I, section 10, of the Illinois Constitution creates a privilege identical to the fifth amendment. Illinois courts will follow the decisions of the United States Supreme Court on identical State and Federal constitutional provisions. *People v. Jackson* (1961), 22 Ill. 2d 382, 176 N.E.2d 803, *cert. denied* (1962), 368 U.S. 985, 7 L. Ed. 2d 523, 82 S. Ct. 600.

■■ In *United States v. Doe* (1984), 465 U.S. 605, 79 L. Ed. 2d 552, 104 S. Ct. 1237, the Supreme Court analyzed the scope of the fifth amendment protection to be afforded to documents and records which are voluntarily kept or prepared. The court stated, " '[T]he Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled testimonial communications.' " (*United States v. Doe* (1984), 465 U.S. 605, 611, 79 L. Ed. 2d 552, 559, 104 S. Ct. 1237, 1241, quoting *Fisher v. United States* (1976), 425 U.S. 391, 409-10, 48 L. Ed. 2d 39, 55-56, 96 S. Ct. 1569, 1580-81.) The *Doe* court concluded that the contents of the voluntarily kept documents were not privileged absent a showing that the owner prepared the documents involuntarily or that the subpoena would force him to restate, repeat, or affirm the truth of their con-

tents. 465 U.S. 605, 612, 79 L. Ed. 2d 552, 559-60, 104 S. Ct. 1237, 1242.

The Bernsteins do not contend that the requested documents were kept under any compulsion. Rather, the documents, if in existence, were voluntarily maintained in the ordinary course of running their business. Therefore, no compulsion is present and the contents of the documents are not privileged consistent with our reading of *Fisher* and *Doe*.

■ The actual rule developed and enunciated by the *Fisher* and *Doe* cases states that although the contents of a document may not be privileged, the act of producing the document may be. In *Doe*, the district court found and the Supreme Court upheld that enforcement of the subpoena would force the respondent to admit the existence of the records demanded, that the records are in his possession, and that they are authentic. (465 U.S. 605, 613-14 n.11, 79 L. Ed. 552, 560-61 n.11, 104 S. Ct. 1237, 1242 n.11.) These communications, if compelled by subpoena, would constitute testimonial self-incrimination. As in *Doe*, compelling production of the voluntarily kept documents in the present case will have testimonial impact and a possibly incriminating effect. We therefore find that the State, in order to compel production of these records, must grant the Bernsteins immunity for the act of producing the documents and the compelled testimonial statements that accompany production.

The motion presented to the court seeking immunity for the Bernsteins stated that immunity was sought pursuant to the Illinois immunity provision (Ill. Rev. Stat. 1985, ch. 38, par. 106 *et seq.*), which in relevant part states:

"106—1. Granting of Immunity.

In any investigation before a Grand Jury, or trial in any court, the court on motion of the State may order that any material witness be released from all liability to be prosecuted or punished on account of any testimony or other evidence he may be required to produce.

106—2. Effect of Immunity.

Such order of immunity shall forever be a bar to prosecution against the witness for any offense shown in whole or in part by such testimony or other evidence except for perjury committed in the giving of such testimony."

The language of section 106-2 provides for a grant of transactional immunity. (*People ex rel. Cruz v. Fitzgerald* (1977), 66 Ill. 2d 546, 363 N.E.2d 835.) Transactional immunity is broader than the immunity granted by the Federal statute which grants use and derivative use

immunity and prevents the prosecution from using the compelled testimony or any information derived therefrom in the prosecution of the witness. Transactional immunity accords full immunity from prosecution for any offense to which the compelled testimony relates. (*Kastigar v. United States* (1972), 406 U.S. 441, 32 L. Ed. 2d 212, 92 S. Ct. 1653.) In interpreting section 106's predecessor section, which was similarly worded, our supreme court stated that the statute eliminates the constitutional privilege against self-incrimination by a grant of immunity that bars the prosecution of the witness for any offense "shown in whole or part by such testimony." (*People v. Walker* (1963), 28 Ill. 2d 585, 590, 192 N.E.2d 819.) Considering the principles set out in *United States v. Doe* and the transactional immunity granted by the Illinois immunity provision, the issue presented by the Bernsteins is whether or not the grant of immunity will protect them from prosecution for sales and income tax fraud. Pursuant to *Doe*, the contents of the documents are not protected, yet it is clear that transactional immunity attaches to all claims directly revealed by the act of producing the requested documents.

■ We agree with the Bernsteins that transactional immunity may not be transmuted into anything short of a prohibition against the prosecution for all offenses to which the compelled evidence relates. (*People ex rel. Scott v. Walsh* (1980), 89 Ill. App. 3d 831, 412 N.E.2d 208; *People ex rel. Cruz v. Fitzgerald* (1977), 66 Ill. 2d 546, 363 N.E.2d 835.) The compelled testimony for which the State has offered immunity is that the records sought exist, are in the Bernsteins' possession, and are the records sought by the subpoena. The Bernsteins maintain that even this testimony "relates" to the crimes of State income and sales tax fraud which the State seeks to pursue. We believe, however, that compelled testimony that the records exist and are in the Bernsteins' possession does not relate to the crimes of tax fraud. Immunity for the act of production is narrow and protects the Bernsteins only from prosecution for any crimes which are revealed by the existence or possession of the requested records.

■ Moreover, pursuant to *Doe*, the contents of the records are not protected. Any evidence revealed by the contents of the documents which would aid the State in its prosecution can be used. The immunity order issued by the trial court is in accordance with these findings. We therefore find that the immunity order was proper and we refuse to issue the requested writ of prohibition sought by the Bernsteins prohibiting the State from continuing its investigation and prosecution.

The State has also attempted to compel production of the following records, which they consider to be "required records" because they are

required by statute or regulation to be kept: all cancelled checks, all bank statements, all inventory records, and all sales and purchase invoices pertaining to the business known as Milwaukee Products. As noted above, we find that the cancelled checks and bank statements were mischaracterized by the State and should be voluntarily kept records.

The State did not seek immunity for any records required to be kept due to the required-records doctrine, which provides that an individual may not assert the fifth amendment privilege against self-incrimination to shield personal business records if those records are required by law to be kept. *Shapiro v. United States* (1948), 335 U.S. 1, 92 L. Ed. 1787, 68 S. Ct. 1375; *People v. Herbert* (1982), 108 Ill. App. 3d 143, 438 N.E.2d 1255, *cert. denied* (1983), 459 U.S. 1204, 75 L. Ed. 2d 436, 103 S. Ct. 1190.

The Bernsteins first claim that the records labelled by the State as required records actually are not required to be kept. The Bernsteins cite the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 440 *et seq.*), and section 130.805 of the Illinois Administrative Code (86 Ill. Admin. Code 130.805 (1985)), adopted by the Department of Revenue as its regulations, as authority that the requested records are not required to be kept. Section 130.805 states what records constitute a minimum requirement:

> "*What Records Constitute Minimum Requirement*
> Where a taxpayer's business consists exclusively of the sale of tangible personal property at retail, the following records will be deemed by the Department to constitute a minimum for the purposes of the [Retailers' Occupation Tax] Act:
> a) Cash register tapes and other data which will provide a daily record of the gross amount of sales.
> b) A record of the amount of merchandise purchased. To fulfill this requirement, copies of all vendors' invoices and taxpayers' copies of purchase orders must be retained serially and in sequence as to date.
> c) A true and complete inventory of the value of stock on hand taken at least once each year." 86 Ill. Admin. Code sec. 130.805 (1985).

The Bernsteins maintain that pursuant to this regulation, they were not required to maintain cancelled checks or bank statements and that the State's request for "all inventory records [and] all *** sales and purchase invoices" is overly broad and ambiguous. We agree that the minimum requirements do not require a retailer to maintain cancelled checks or bank statements. With respect to sales and purchase in-

voices, section 130.801(a) of the Administrative Code specifically lists "all sales and purchase invoices" as required records. (86 Ill. Admin. Code 130.801(a) (1985).) The State has conceded that only annual inventory records are required and it has offered to amend the subpoena to reflect this requirement. We therefore find that the inventory records and invoices are required to be kept and now we must determine if they meet the requirements of the required-records doctrine.

■ The required-records exception to the fifth amendment was first recognized in *Shapiro v. United States* and since has been refined in *Grosso v. United States* (1968), 390 U.S. 62, 19 L. Ed. 2d 906, 88 S. Ct. 709, and *Marchetti v. United States* (1968), 390 U.S. 39, 19 L. Ed. 2d 889, 88 S. Ct. 697. Essentially, the exception states that where an individual is required by the government to keep records, those records are subject to disclosure if the following three factors exist: (1) the purpose of the recordkeeping requirement is essentially regulatory; (2) the records are of a kind customarily kept; and (3) the records themselves have assumed public aspects. (See also *People v. Herbert* (1982), 108 Ill. App. 3d 143, 438 N.E.2d 1255, *cert. denied* (1983), 459 U.S. 1204, 75 L. Ed. 2d 436, 103 S. Ct. 1190.) We will consider each prong of this test to determine if the required-records exception applies to the records sought by the State in the subpoena.

Under the first prong, the Bernsteins contend that the purpose of the recordkeeping requirement is not regulatory, but rather is to apprehend violators of the tax act. The State argues that the purpose of the Retailers' Occupation Tax Act and the recordkeeping requirements promulgated thereunder is to collect taxes and not to apprehend violators. We agree with the State. The purpose of the regulation, as suggested by the title, is to aid the government enforcement and collection of taxes. The Bernsteins claim that the State's characterization of the purpose of the requirement was rejected by the Supreme Court in *Marchetti v. United States*. However, the tax levied there is clearly different than the tax imposed in the present case. In *Marchetti*, the statute was the Federal wagering tax statute and the recordkeeping requirement involved registering before engaging in the business of accepting wagers. The *Marchetti* court, in finding no regulatory purpose, stated, "[T]he United States' principal interest is evidently the collection of revenue and not the punishment of gamblers [citation]: but the characteristics of the activities about which information is sought, and the composition of the groups to which inquiries are made, readily distinguish this situation from that in *Shapiro*" (maximum price regulation under the Emergency Price Control Act). (*Marchetti v. United States* (1968), 390 U.S. 39, 57, 19 L. Ed. 2d 889, 903, 88 S. Ct. 697, 707.) In

*Marchetti*, the court was not hesitant to note that the group regulated was inherently suspect of criminal activity. (390 U.S. 39, 57, 19 L. Ed. 2d 889, 893, 88 S. Ct. 697, 707.) The activity regulated in *Marchetti* is widely prohibited by both Federal and State laws and is clearly distinguishable from the statute before us.

Furthermore, in *People v. Herbert*, the respondent argued that because his records were sought by a grand jury investigating him for possible criminal violations, the reason for which his records were sought was not regulatory. The court held that respondent was improperly attempting to shift the focus away from the purpose for which the records were required to be kept to the purpose for which they were sought. In *Herbert*, the purpose of the recordkeeping requirement was to monitor the operation of Medicaid programs. The regulation before us is similar in the way it aids in enforcement of a government program. The recordkeeping requirement is part of a regulatory scheme established by the Department of Revenue and adequately fulfills the regulation requirement for the required-records doctrine.

The second prong of the required-records doctrine requires that the records must be of a type customarily kept. The Bernsteins claim that the State must prove that they, as opposed to any retailer, would customarily keep the records sought and, since there was no evidence or admission by them that they kept such records, the State has failed to meet its burden. We do not agree. The State need only prove that retailers would customarily keep such records. Without further inquiry, we find it to be a fair assumption that purchase and sales invoices and inventory records would customarily be kept by a retailer.

Finally, the required records must have assumed some public aspects. In *People v. Herbert* the court held that the required records, medical records of various Medicaid recipients, had assumed public aspects because they assisted the Department of Public Aid in its analysis of the operation of the Medicaid program. The *Herbert* court emphasized that the records could be inspected by officials of the Department of Public Aid. The tax program in the case before us is analogous to the Medicaid program. The recordkeeping requirement is for the purpose of assisting the operation and regulation of State tax collection. The Department of Revenue, simply by virtue of requiring that these records be kept, implicitly reserves the right to inspect the records, and the records thereby obtain public aspects.

The Bernsteins cite the case of *United States v. Porter* (7th Cir. 1983), 711 F.2d 1397, for the proposition that the IRS-taxpayer relationship is insufficient to instill the taxpayer's tax records with public aspects. In *Porter*, the government sought business records of a sole

proprietor for the purpose of investigating possible Federal income tax evasion. We envision two problems with the Bernsteins' reliance on *United States v. Porter*. Before reaching an analysis of the government's required-records argument, the *Porter* court granted protection to the production of the taxpayer's cancelled checks and deposit slips under an application of the act-of-production theory described in *Fisher*. The *Porter* court determined that, while the contents of the documents were not protected, the act of producing cancelled checks and deposit slips results in compelled testimony protected under the fifth amendment. (*United States v. Porter* (7th Cir. 1983), 711 F.2d 1397, 1402.) To reach this conclusion based on *Fisher*, the court must have made the implied determination that the preparation or maintenance of all the records sought was wholly voluntary. We therefore fail to see how the court could afford the voluntarily kept records protection under *Fisher* and subsequently pursue an analysis of the same records under the required-records exception to the fifth amendment.

Furthermore, the records sought by the government in *Porter* were for an investigation for failure to comply with Federal income tax laws. In contrast, the government in the present case sought the records for enforcement of income tax *and* the Retailers' Occupation Tax Act. The Federal government does not regulate operation of retail trade. In *Porter*, if the government was successful in obtaining the information, they could prosecute only for a violation of the individual tax requirements. The difference in requiring records for enforcement of individual tax liability and requiring records for enforcement of a retailer's tax liability is clear.

■ The initial requirement of this doctrine, that the records be required as part of a government regulatory program, is closely related to this requirement of public aspects. As in *Herbert*, it is the regulation of a government program that instills the records with public aspects. Because the records in this case are required to be kept for retailer occupation tax purposes, and may be inspected by the Department of Revenue, the documents are instilled with public aspects. Since we find that the records sought by the subpoena were required to be kept for a regulatory purpose, customarily would be kept by the regulated party, and have assumed public aspects, they properly fall within the required-records exception to the fifth amendment and must be produced.

We briefly note that the Bernsteins argue against the continued viability of the required-records doctrine. We fail to read any of the cited authority or support for this contention as doing away with or overruling our application of the doctrine.

The Bernsteins next contend that even though the required-records doctrine eliminates any privilege for the contents of the required records, the act of producing the same documents may still be privileged under the act-of-production doctrine as developed in *Fisher* and *Doe*. The Bernsteins rely on a portion of the *Shapiro* opinion which held that even if the contents of the documents are not privileged, any testimonial evidence in relation to those documents can be compelled only in exchange for a proper grant of immunity. (*Shapiro v. United States* (1948), 335 U.S. 1, 26-27, 92 L. Ed. 1787, 1803-04, 68 S. Ct. 1375, 1388-89.) The *Shapiro* court, however, was referring only to oral testimony which was related to the compelled documents. This discussion in *Shapiro* was not, as the Bernsteins imply, a foreshadowing of the act-of-production doctrine which was first enunciated by the court in 1976.

■ From all available case law, it is difficult to determine the interrelationship, if any, between the act-of-production doctrine and the required-records doctrine. From an analysis of what case law does exist, however, we find that once a court has determined that a party's records are required to be kept, this party cannot then claim that the act of producing the required documents is protected.

In *In re Doe* (2nd Cir. 1983), 711 F.2d 1187, the court addressed the same argument made by the Bernsteins in this case. The court held that the required-records doctrine is an exception to the fifth amendment privilege. As such, it necessarily overrides the privilege in instances in which the privilege would otherwise apply. The court noted that *Fisher* was not concerned with required records and that nothing in its analysis could be construed as weakening the required-records doctrine. (*In re Doe* (2d Cir. 1983), 711 F.2d 1187, 1192-93.) Although *In re Doe* was decided before *United States v. Doe*, the reasoning in the latter case supports our conclusion even more. The court in *United States v. Doe* stated that the case concerned only business records and documents not required by law to be disclosed to a public agency. (*United States v. Doe* (1984), 465 U.S. 605, 607 n.3, 79 L. Ed. 2d 552, 557 n.3, 104 S. Ct. 1237, 1239 n.3.) The decision in *United States v. Doe* does not concern required records and, as with *Fisher*, has no effect on the required-records doctrine.

Furthermore, in *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983* (2nd Cir. 1983), 722 F.2d 981, the court in commenting on the applicability of the act-of-production doctrine to corporate records, stated that the governmental requirement that records be kept implies an obligation to produce them upon the government's demand, which amounts to a waiver of any fifth amendment claim with respect to the act of production. The court also stated

that since the records are required to be kept, production of them can hardly provide the basis for an inference of criminality in possessing them. (722 F.2d 981, 987 n.5.) We find these to be fair assertions of the relationship between the act-of-production doctrine and the required-records doctrine. Therefore, because we have held these documents to be required, we do not find it necessary to grant immunity in regard to the production of the documents.

◼◼ The Bernsteins make several other claims in regard to the subpoena seeking production of their records. They argue that the subpoena violates their fourth and fourteenth amendment rights. Within these arguments, they first contend that any material sought for the time beyond the statute of limitations is irrelevant and incompetent. The statute of limitations, however, mandates that a prosecution for a violation of this statute must be commenced within three years of the commission of the violation. (Ill. Rev. Stat. 1985, ch. 120, par. 452.) The statute has no relevance to the gathering of information for the purposes of a grand jury investigation. While the statute may eventually bar prosecution for the period beyond the statute of limitations, the grand jury is not limited by this time constraint. Any information which legitimately can be obtained by the grand jury may be relevant to the prosecution for the allowable period even if the information relates to the period beyond the statute.

◼◼ In regard to the Bernsteins' contention that the subpoena is overbroad, we do not agree. The subpoena sufficiently specifies which documents are sought by limiting itself to the records that reflect certain transactions for a specific time period. The subpoena does not make a demand for irrelevant material. Nor do we find merit in the Bernsteins' claim that the State's demand is pure harassment. It is irrelevant to this appeal that the State requested all documents provided by the Bernsteins to their accountant since the issue has been determined by the previous appeal in this case. *In re October 1985 Grand Jury No. 746* (1987), 154 Ill. App. 3d 288.

For the foregoing reasons, the order of the circuit court of Cook County holding the Bernsteins in contempt for failure to produce the documents is affirmed.

Order affirmed.

RIZZI and WHITE, JJ., concur.