*In re* OCTOBER 1985 GRAND JURY NO. 746

First District (3rd Division)　No. 86—0306

Opinion filed March 4, 1987.—Rehearing denied April 20, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Mark L. Rotert and Joan G. Flickinger, Assistant Attorneys General, of Chicago, of counsel), for the People.

Carlo E. Poli, Allen C. Engerman, and Barry A. Erlich, all of Engerman & Erlich, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

The State appeals from an order of the trial court quashing a *subpoena duces tecum* issued to Bernard Drebin, an accountant, during the course of grand jury proceedings investigating Drebin's clients, Jack and Wanda Bernstein.

The Illinois Attorney General initiated a grand jury investigation of the Bernsteins for the alleged failure to pay the proper amount of retailers' occupation tax for the years 1982-84. As a part of its investigation, the grand jury issued a subpoena to Drebin, the Bernsteins' accountant. The subpoena called for production of retained copies of United States income tax returns prepared by Drebin for the Bernsteins personally and d/b/a Milwaukee Products. The subpoena also called for production of any written material provided to Drebin by the Bernsteins and used by Drebin in preparing the Bernsteins' tax returns and any workpapers prepared and used by Drebin in preparation of the tax returns for the years in question.

When Drebin appeared before the grand jury and was asked about the Bernsteins and their tax returns, Drebin refused to answer the questions, asserting the Illinois accountant-as-witness provision of the Illinois Public Accounting Act (Ill. Rev. Stat. 1985, ch. 111, par. 5533). This provision makes privileged any information or evidence obtained by an accountant in his confidential capacity as a public accountant.

The State then terminated the interrogation and appeared before the trial court to seek entry of a rule to show cause against Drebin as to why he should not be held in contempt. The trial court declined to issue the rule and requested that the parties present the issue in the form of a motion to quash. Drebin filed a motion to quash the *subpoena duces tecum*. After considering briefs and hearing oral argument, the trial court granted Drebin's motion to quash. The State appeals.

■ Before reaching the merits, we must address Drebin's challenge to the State's authority to bring this appeal. Drebin relies on *In re February 1970 Cook County Grand Jury* (1970), 46 Ill. 2d 448, 263

N.E.2d 832, where our supreme court dismissed the appeal of two orders, one suppressing evidence illegally obtained by the grand jury pursuant to a subpoena and the second order quashing a *subpoena duces tecum* issued in the grand jury proceedings. In that case, the State predicated its right to review on Supreme Court Rule 604(a)(1), which permits appeals by the State from orders suppressing evidence in criminal cases. (87 Ill. 2d R. 604(a)(1).) In dismissing the appeal, the court held that "a grand jury investigation is not a criminal case within the meaning of Rule 604(a)(1) and that appeal is not the proper vehicle for review of the challenged orders." *In re February 1970 Cook County Grand Jury* (1970), 46 Ill. 2d 448, 450, 263 N.E.2d 832.

By its holding in *1970 Cook County Grand Jury*, the court has apparently foreclosed the possibility of appealing orders issued in the course of grand jury proceedings under Rule 604(a)(1). We do not believe, however, that the court intended to foreclose all possibility of appeal of this type of order. There, the court relied upon *People v. Ryan* (1951), 410 Ill. 486, 103 N.E.2d 116, *cert. denied* (1952), 343 U.S. 964, 96 L. Ed. 1361, 72 S. Ct. 1057, for the proposition that a grand jury proceeding is not a criminal case, but is a secret investigation which may or may not result in the commencement of criminal proceedings. *People v. Ryan* is also cited in the joint committee comments to section 2—1101 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1101). Section 2—1101 provides that a court may quash or modify any subpoena for good cause shown. The committee comments cite *People v. Ryan* to show that section 2—1101 is merely a codification of existing law. Therefore, in the present case, the trial court had the authority to quash the subpoena at issue under section 2—1101. The State contends that because the court's authority to quash the subpoena is found in the civil code, that order may be appealed under the rules applicable to civil appeals. Supreme Court Rule 301 states that every final judgment of a circuit court in a civil case is appealable as of right. 87 Ill. 2d R. 301.

We also note other orders issued in the course of grand jury proceedings where this court has allowed appeal before the proceedings have reached the stage of an actual criminal case. When a witness subpoenaed by a grand jury refuses to testify or produce evidence, he may be held in contempt. The judgment holding a witness in contempt by the trial court is appealable. (See, *e.g., People v. Bickham* (1980), 90 Ill. App. 3d 897, 414 N.E.2d 37; *In re Grand Jury Investigation of Donald Swan* (1981), 92 Ill. App. 3d 856, 415 N.E.2d 1354.) Similarly, appeal was allowed in *In re Extended March 1975 Grand Jury No. 655* (1980), 84 Ill. App. 3d 847, 405 N.E.2d 1176. In that case, this

court allowed appeal from a trial court order denying a petition which sought release of grand jury evidence. The appellants sought the evidence for use in a civil case pending in Federal court. In our estimation, neither a judgment holding a witness in contempt nor an order denying release of grand jury evidence is more of a criminal case within the meaning of Rule 604(a)(1) than an order quashing a grand jury *subpoena duces tecum.* Yet courts have allowed appeal of such orders without questioning the right to appeal. Such trial court orders pertaining to grand jury matters are the result of independent proceedings involving a witness or evidence before a grand jury before the proceedings have reached the point of actually being a criminal case. Because such appeals are consistently allowed, we do not believe that our supreme court intended to foreclose all appeal of orders issued in the course of grand jury proceedings.

■■ Whether an order constitutes a final judgment for purposes of Rule 301 must be determined upon consideration of the specific nature of the controversy and the effect of the order upon that controversy. (*People ex rel. Pollution Control Board v. Lloyd A. Fry Roofing Co.* (1972), 4 Ill. App. 3d 675, 281 N.E.2d 757.) An order which in substance finally adjudicates the rights of the parties and terminates the litigation is final and appealable. (*Myers v. Myers* (1977), 51 Ill. App. 3d 830, 366 N.E.2d 1114.) Generally, orders entered pursuant to discovery rules are interlocutory and not immediately appealable. As preliminary orders in a pending case, discovery orders are reviewable on appeal from the final order in that case. (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 429 N.E.2d 483.) Where, however, a discovery order finally concludes a proceeding begun against a witness, the order is final even though entered in the context of another proceeding, due to the separate and independent nature of the proceeding involved. 87 Ill. 2d 167, 429 N.E.2d 483.

The case before us is similar to *Laurent v. Brelji* (1979), 74 Ill. App. 3d 214, 392 N.E.2d 929, where this court held an order compelling compliance with an administrative subpoena to be final and appealable. The recipient of the subpoena was not a party to the administrative hearings. The court distinguished this order from other discovery orders by pointing out that after the court ordered the recusant witness to testify and produce the records, the proceeding before it was terminated. The court noted that in that sense it was distinguishable from other discovery orders entered in a cause pending in the same court. The order of the court finally determined the rights of the parties before it and terminated the litigation. (See *Ellis v. Interstate Commerce Com.* (1915), 237 U.S. 434, 59 L. Ed. 1036, 35 S.

Ct. 645.) Preliminary orders in a pending suit are not appealable because they are reviewable on appeal from the final order in the suit. In the present case, as in *Laurent,* there is no suit pending. Additionally, appellate review of the order before us should be allowed to resolve an important issue completely separate from and collateral to the merits of the ongoing grand jury proceedings. See *In re Grand Jury Investigation of Ocean Transportation* (D.C. Cir. 1979), 604 F.2d 672, *cert. denied* (1979), 444 U.S. 915, 62 L. Ed. 2d 169, 100 S. Ct. 229.

■ We are aware of the rule that an order *denying* a motion to quash a grand jury *subpoena duces tecum* is not a final judgment and not appealable. (*United States v. Ryan* (1971), 402 U.S. 530, 29 L. Ed. 2d 85, 91 S. Ct. 1580; *Cobbledick v. United States* (1940), 309 U.S. 323, 84 L. Ed. 783,60 S. Ct. 540.) As pointed out in *United States v. Ryan* (1971), 530, 532, 29 L. Ed. 2d 85, 88, 91 S. Ct. 1580, 1581-82, "one to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey." Granting of a motion to quash, however, does not afford the possibility of disobedience and subsequent contempt review. What is critical is whether the party unsuccessfully seeking the subpoena has any other means of obtaining review. If the present order is held nonappealable, the only other opportunity for review of the subpoena would be if and when there is a final decision in the State's proceedings against the Bernsteins. At that stage, review of the accountant-privilege statute would not be of importance to either party. Any judgment against the Bernsteins would foreclose review of this important issue since the Bernsteins would be unlikely to raise the issue on appeal. At the same time, if the State failed to prove its case and the issue was reversed on appeal, the Bernsteins could not be retried, having already been acquitted. The rule against interlocutory appeal is designed to prevent piecemeal litigation. Nevertheless, we do not believe the rule was designed to prevent review of an order such as the one presented to us, which is independent from and collateral to the grand jury proceedings and with potentially great impact and of great importance to the parties involved. Thus, we find that the order at issue before us is final and appealable.

In reaching the merits, this court has been called upon to interpret the accountant-as-witness provision of the Illinois Public Accounting Act, and decide on its application. The relevant portion of the provision states:

"A public accountant shall not be required by any court to divulge information or evidence which has been obtained by him in his confidential capacity." Ill. Rev. Stat. 1985, ch. 111, par. 5533.

While the Illinois statute has been in effect since 1943, very few courts have been called upon to rule on its proper application. Research turns up only two cases in which this statute was invoked and successfully precluded discovery of information received by the accountant in his confidential capacity. (*Palmer v. Fisher* (7th Cir. 1955), 228 F.2d 603, *cert. denied* (1956), 351 U.S. 965, 100 L. Ed. 1485, 76 S. Ct. 1030; *Western Employers Insurance Co. v. Merit Insurance Co.* (N.D. Ill. 1979), 492 F. Supp. 53.) Both cases make light of the fact that there was no such privilege at common law and that generally there is no such privilege in the Federal system. No Illinois courts have interpreted the statute.

The Illinois statute is atypical when compared to accountant-witness statutes in other States. The difference stems from the fact that the courts have interpreted the Illinois statute to have created a privilege which inures to and can be claimed only by the accountant. (*Dorfman v. Rombs* (N.D. Ill. 1963), 218 F. Supp. 905; *Baylor v. Mading-Dugan Drug Co.* (N.D. Ill. 1972), 57 F.R.D. 509; *Western Employers Insurance Co. v. Merit Insurance Co.* (N.D. Ill. 1979), 492 F. Supp. 53.) In other jurisdictions with similar provisions, most are designed to protect the client and his communication with the accountant in a manner similar to the attorney-client privilege. Yet, with the interpretation given to the Illinois statute, the only benefit inures to the accountant. Moreover, the client has no say in whether or not the accountant invokes the statute to prohibit disclosure of information obtained from the client. By the very wording of the statute, "A public accountant shall not be required to divulge," the accountant has the choice of whether or not he will divulge the requested information. Hence, the only possible benefit to the client rests within the discretion of the accountant. When faced with the application of the statute, a Federal district court has said it is admittedly "an accountant privilege and not an accountant client privilege." (*Dorfman v. Rombs* (N.D. Ill. 1963), 218 F. Supp. 905, 970.) The same court likened the privilege to the attorney work product as opposed to protecting the rights of the client.

Legislative history reveals nothing about the purpose behind this section. One court interpreting the Illinois statute has held that the purpose of the act creating the privilege is that the particular accountant-client relationship is so valuable to society that it should be

fostered by preserving the confidentiality of the relationship even though evidence which might aid in the quest for truth will be lost. (*Baylor v. Mading-Dugan Drug Co.* (N.D. Ill. 1972), 57 F.R.D. 509, 511.) The *Baylor* court obviously interpreted the statute to protect the accountant-client relationship. Yet this has not been the result in application. We must question why the statute has been construed to benefit the accountant and the policy behind this privilege. Historically, communication privileges were tolerated because they were deemed necessary to promote full and honest disclosure between parties to certain relationships. Thus, it would seem logical that such privileges should be invoked only by the persons having a legitimate interest in keeping the information confidential. It is difficult to perceive what independent interest the accountant may have in keeping his client's information secret. The law may actually have created an unnecessary bar to the availability of evidence relevant to the proper disposition of disputes. Regardless, it is not our intention to rewrite the statute. Rather, we must interpret the statute to determine if Drebin can successfully invoke it to quash the subpoena requesting production of his client's tax returns and accompanying work papers.

The two cases which have upheld application of this Illinois statute are not helpful in defining the scope of the privilege. *Western Employers Insurance Company* gives no indication of what type of information was sought from the accountant. The court apparently applied the statute based solely on the fact that Peat Marwick, the accountant subpoenaed in connection with the proceedings, is a public accountant, and no indication was given of whether any requirements were imposed for proper invocation of the statute. (*Western Employers Insurance Co. v. Merit Insurance Co.* (N.D. Ill. 1979), 492 F. Supp. 53.) Similarly, in *Palmer v. Fisher*, we are given no information as to what type of evidence was sought from the accountant. The court merely stated that the legislature had declared it to be public policy in Illinois that public accountants shall not be required to testify about information obtained in their confidential capacity as accountants. *Palmer v. Fisher* (7th Cir. 1955), 228 F.2d 603, 608.

■ The issue before us is how much evidence and information obtained from the client is privileged. We find no cases to help us determine whether all information given to an accountant is privileged or whether the statute protects only information the accountant received in confidence. In our interpretation of section 27 (Ill. Rev. Stat. 1985, ch. 111, par. 5533), the legislature, by requiring that the information be received in his confidential capacity as an accountant, evidenced an intent to protect only the information received in confidence from the

client. Thus, Drebin may invoke the statute to prohibit disclosure of the Bernsteins' tax information if such information may properly be considered confidential.

Both Illinois and Federal courts have held that for a communication to be confidential, it must be intended that the information be confidential. (*Spencer v. Burns* (1952), 413 Ill. 240, 108 N.E.2d 413; *United States v. Tellier* (2d Cir. 1958), 255 F.2d 441, *cert. denied* (1958), 358 U.S. 821, 3 L. Ed. 2d 62, 79 S. Ct. 33.) The confidentiality of tax information has been the subject of dispute in many courts. We recognize that the issue most often arises in the context of the attorney-client privilege. While we have already distinguished the attorney-client privilege from the privilege created by section 27 (Ill. Rev. Stat. 1985, ch. 111, par. 5533), the requirement of confidentiality is the same, and therefore these cases are instructive.

The controlling case is *United States v. Couch* (1973), 409 U.S. 322, 34 L. Ed. 2d 548, 93 S. Ct. 611, where the United States Supreme Court relied on the intent of the taxpayer to reach the conclusion that "there can be little expectation of privacy where records are handed to an accountant, knowing that mandatory disclosure of much of the information therein is required in an income tax return." (409 U.S. 322, 335, 34 L. Ed. 2d 548, 558, 93 S. Ct. 611, 619). The Supreme Court addressed this issue in response to the petitioner's argument that the confidential nature of the accountant-client relationship and a resulting expectation of privacy should protect her from turning over financial records requested of her accountant pertaining to her tax liability. Because the court was addressing a specific claim of the petitioner, Drebin's claim that the language quoted above is *dicta* is without merit.

The *Couch* result has been reached in more recent cases. In *United State v. Winfelder* (7th Cir. 1986), 790 F.2d 576, the court addressed the issue of confidentiality of tax records. There, the government sought tax records that defendant had subsequently turned over to his attorney. In finding the tax information not confidential, the court stated: "[W]e do not believe that the information sought by the subpoenas was protected by the attorney-client privilege because that information was not confidential." (790 F.2d 576, 579.) The *Winfelder* court cited *United States v. Lawless* (7th Cir. 1983), 709 F.2d 485, where the same court held that "information transmitted for the purpose of preparation of a tax return, though transmitted to an attorney, is not privileged information." (709 F.2d 485, 488.) One of the reasons underlying the *Lawless* holding was that when information will be transmitted to a third party, such information is not confiden-

tial. The *Lawless* court further held that "disclosure of tax information effectively waives the privilege 'not only to the transmitted data but also as to the details underlying that information.' " 709 F.2d 485, 488, quoting *United States v. Cote* (8th Cir. 1972), 456 F.2d 142, 145.

■ These cases are sufficient support for us to hold that the information transferred to Drebin by the Bernsteins was not confidential. Therefore, Drebin cannot invoke section 27 (Ill. Rev. Stat. 1985, ch. 111, par. 5533) to block discovery of the tax information. Were we to hold otherwise, any person attempting to evade the reporting requirements of the government could simply transfer any documents pertaining to his tax liability to his accountant and thereby shield such information from discovery. We do not believe that the legislature so intended when this statute was enacted.

For the foregoing reasons, the judgment of the circuit court of Cook County quashing the *subpoena duces tecum* is reversed and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Reversed and remanded.

RIZZI and WHITE, JJ., concur.