(No. 65221.—

*In re* OCTOBER 1985 GRAND JURY No. 746 (Bernard Drebin, Appellant).

*Opinion filed October 20, 1988.*

468

Carlo E. Poli, Allen C. Engerman, Barry A. Erlich and Jeffery A. Brown, of Engerman, Brown & Poli, Ltd., of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Terence M. Madsen and Joan G. Fickinger, Assistant Attorneys General, all of Chicago, of counsel), for the People.

Kimball R. Anderson and Jennifer G. Brown, of Winston & Strawn, of Chicago, for amicus curiae Illinois CPA Society.

JUSTICE WARD delivered the opinion of the court:

Bernard Drebin, a certified public accountant (CPA), appeals the appellate court's decision ordering his compliance with a subpoena *duces tecum* served upon him in the course of a Cook County grand jury investigation of his tax clients, Jack and Wanda Bernstein. The Attorney General in October 1985 commenced a grand jury investigation of the Bernsteins for alleged underpayment of retailers' occupation taxes and Illinois income taxes for 1982, 1983, and 1984. Drebin had prepared the Bern-

steins' tax returns for the years under investigation. The grand jury issued a subpoena *duces tecum* directed to Drebin calling for production of the following:

"[R]etained copies of U.S. income tax returns prepared by you for Jack and Wanda Bernstein, * * * d/b/a Milwaukee Products, for the years 1982, 1983 and 1984 together with any and all schedules or attachments thereto; retained copies of Illinois income tax returns prepared by you for the above Jack and Wanda Bernstein for the years 1982, 1983 and 1984 together with any and all schedules or attachments thereto; any written material provided to you by the above Jack and Wanda Bernstein and used by you in preparation of any of the tax returns or attachments or schedules referred to above; and any and all worksheets or workpapers prepared by you for use in preparing any of the tax returns or attachments or schedules referred to above."

In response to the subpoena, Drebin appeared before the grand jury and answered questions of an assistant Attorney General concerning his identity and whether he was served with a subpoena. Drebin then responded to questions concerning the Bernsteins and their tax returns:

"I am a certified public accountant duly licensed by the State of Illinois. I respectfully decline to answer that question pursuant to Illinois Revised Statutes, Chapter 111, Section 5533 which provides that I, as a public accountant, am not required to divulge information or evidence which has been obtained by me in my confidential capacity as a public accountant."

The assistant Attorney General halted the interrogation and later appeared before the presiding judge of the Cook County circuit court criminal division, asking for a rule to show cause why Drebin should not be held in contempt. The court declined to enter a rule and asked the parties to present the issue in the form of a motion to quash the subpoena. The court granted the motion to

quash, ruling that, under the statutory privilege asserted (Ill. Rev. Stat. 1985, ch. 111, par. 5533), an accountant could not be compelled to provide the information sought by the subpoena.

On the State's appeal to the appellate court, that court held that the State had the right to appeal the order quashing the subpoena under Supreme Court Rule 301 (107 Ill. 2d R. 301). The court also held that Drebin was obliged to comply with the subpoena, stating that the information sought was not confidential. (154 Ill. App. 3d 288.) This court granted Drebin's petition for leave to appeal under our Rule 315 (107 Ill. 2d R. 315), and the Illinois CPA Society was given leave to file an *amicus curiae* brief in support of Drebin's appeal.

Drebin first contends that the appellate court erred in holding that the State may, as a final judgment under Rule 301, appeal a trial court's decision quashing a subpoena *duces tecum* that was issued pursuant to a grand jury investigation. He says the court's order is not appealable, as the proceeding from which the order arose is not a "case" under either the civil or criminal rules for appeals. The State states that the appellate court properly concluded that the circuit court's order is appealable under Rule 301 as a final judgment in a civil case.

The appellate court did recognize that this court, in *In re February 1970 Cook County Grand Jury* (1970), 46 Ill. 2d 448, has held that the State may not appeal, under Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)), the granting of a motion to quash a grand jury subpoena *duces tecum*. Rule 604(a)(1) provides:

"In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indict-

ment, information or complaint; quashing an arrest or search warrant; or suppressing evidence." (107 Ill. 2d R. 604(a)(1).)

In holding that Rule 604(a)(1) does not authorize the State to appeal the quashing of a subpoena issued in a grand jury investigation, this court stated that a grand jury investigation is not a criminal case within the meaning of Rule 604(a)(1) and "appeal is not the proper vehicle for review of the challenged orders." (*In re February 1970 Cook County Grand Jury*, 46 Ill. 2d at 450.) That decision followed the reasoning in *People v. Ryan* (1951), 410 Ill. 486, *cert. denied* (1952), 343 U.S. 964, 96 L. Ed. 1361, 72 S. Ct. 1057, which held that "[a] proceeding before a grand jury is not a pending action but rather a secret investigation which may or may not result in the commencement of a criminal proceeding. \*\*\* There are no parties but only witnesses. There are no issues." *Ryan*, 410 Ill. at 492.

We do not agree with the reasoning of the appellate court that the State could appeal the order quashing the subpoena under Supreme Court Rule 301, which provides that every final judgment in a civil case is appealable as of right. (107 Ill. 2d R. 301.) The appellate court considered that the circuit court's power to quash a grand jury subpoena derives from section 2—1101 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1101). Because the appellate court considered that the authority to quash a grand jury subpoena was derived from the civil code, it concluded that the proceeding was civil in nature and that the challenged order was a final judgment within the meaning of Rule 301 and appealable as in a civil case.

The statutory provisions describing the convening and the powers of the grand jury are found in the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1985, ch. 38, par. 112—1 *et seq.*; see also *People v. Cochrane* (1923),

307 Ill. 126, 131 (recognizing that a grand jury is "a constituent part of every court having general *criminal* jurisdiction" (emphasis added)).) Section 112—4 of the Code of Criminal Procedure of 1963, which provides that a grand jury has the right to subpoena and question witnesses (Ill. Rev. Stat. 1985, ch. 38, par. 112—4), makes no provision for enforcement of the subpoenas. Neither section in the civil nor criminal codes concerning a court's authority to enforce or set aside subpoenas (Ill. Rev. Stat. 1985, ch. 38, par. 155—2; Ill. Rev. Stat. 1985, ch. 110, par. 2—1101) makes reference to subpoenas arising out of grand jury proceedings. This court, however, has previously recognized a circuit court's authority to enforce or set aside a grand jury subpoena as being within its inherent supervisory powers over the grand jury process. (*People ex rel. Hanrahan v. Power* (1973), 54 Ill. 2d 154, 157; *People v. Sears* (1971), 49 Ill. 2d 14, 35-36.) If a witness fails to appear before a grand jury upon service of process, the power to compel his attendance is within the court's supervisory power over the grand jury process. *Sears*, 49 Ill. 2d at 28; see also *People ex rel. Daley v. Fitzgerald* (1988), 123 Ill. 2d 175 (the taking of discovery depositions in a post-conviction proceeding is not a matter governed by our rules respecting discovery in criminal or civil actions, but the trial court acted within its inherent authority in permitting discovery depositions to be taken).

We consider that a grand jury proceeding is neither a criminal nor a civil "case" within the meaning of our rules for appeals in civil or criminal cases. *In re February 1970 Cook County Grand Jury* specifically held that a grand jury investigation is not a criminal case within Rule 604(a)(1), as there are neither parties nor issues involved, but simply a secret investigation. On the same basis, a grand jury investigation cannot be classified as a civil "case." As the Supreme Court has observed, "[a]

grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, it is an *ex parte* investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person." *United States v. Calandra* (1974), 414 U.S. 338, 343-44, 38 L. Ed. 2d 561, 569, 94 S. Ct. 613, 618; see also *People v. Wilson* (1967), 37 Ill. 2d 617, 619 (recognizing that a proceeding under the Post-Conviction Hearing Act is civil in nature, but is a *sui generis* proceeding).

That the State has not been able to appeal this type of order under either Rule 604(a)(1) or Rule 301 has not foreclosed review. Review of such orders has been accomplished through a writ of *mandamus*. (107 Ill. 2d R. 381; see *People v. Sears* (1971), 49 Ill. 2d 14; *People ex rel. Hanrahan v. Power* (1973), 54 Ill. 2d 154, 156.) This court stated in *People ex rel. Hanrahan v. Power* (1973), 54 Ill. 2d 154, 157:

> "We have heretofore recognized that in its supervisory and administrative capacity, this court may consider the propriety of issuing writs of *mandamus* or prohibition when the issues involved are of general and compelling importance. We have applied this criteria *in reviewing the trial court's exercise of supervision over the investigations of a grand jury.*" (Emphasis added.)

See also *People ex rel. Carey v. White* (1976), 65 Ill. 2d 193, 197.

Generally *mandamus* will not lie to correct simple judicial error in matters that the circuit court had jurisdiction to decide, or to control the exercise of judicial discretion (*People ex rel. Continental Air Transport Co. v. Strouse* (1969), 41 Ill. 2d 567, 570), but *mandamus* has been allowed as a method of review where the petition raises issues that are of "great importance to the administration of justice" (*People ex rel. General Motors Corp.*

*v. Bua* (1967), 37 Ill. 2d 180, 192; see also *People ex rel. Daley v. Schreier* (1982), 92 Ill. 2d 271, 275; *People ex rel. Carey v. Covelli* (1975), 61 Ill. 2d 394, 401). We consider the issue raised in this appeal to be one of "great importance to the administration of justice," and one which might otherwise be unreviewable if we do not consider it. Rather than remanding to permit the filing of a petition for *mandamus*, it will be more expeditious and in the interest of judicial economy to treat what is before us as a petition for *mandamus*.

Drebin next contends that the privilege in section 27 of the Illinois Public Accounting Act (Ill. Rev. Stat. 1985, ch. 111, par. 5533) protects the information and paperwork called for by the grand jury subpoena from disclosure. The statute provides:

"A public accountant shall not be required by any court to divulge information or evidence which has been obtained by him in his confidential capacity as a public accountant." Ill. Rev. Stat. 1985, ch. 111, par. 5533.

As the appellate court correctly observed, the question arising is what information or evidence obtained by Drebin from his tax clients is privileged under the statute from disclosure. The statute, in specifying that evidence and information obtained by an accountant in his "confidential capacity" is protected, shows that the legislative intent was that the privilege extend only to information or evidence received by an accountant in confidence from the client. Two Federal decisions that construed the statute (*Palmer v. Fisher* (7th Cir. 1955), 228 F.2d 603, *cert. denied* (1956), 351 U.S. 965, 100 L. Ed. 1485, 76 S. Ct. 1030; *Western Employers Insurance Co. v. Merit Insurance Co.* (N.D. Ill. 1979), 492 F. Supp. 53) did not consider, as the appellate court noted, the scope of the privilege, that is, what information obtained by the accountant in his "confidential capacity" is protected from disclosure.

Generally, four conditions are recognized as necessary for the establishment of a privilege against the disclosure of communications:

"(1) The communications must originate in a *confidence* that they will not be disclosed.

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered*.

(4) The *injury* that would inure to the relation by the disclosure of the communication must be *greater than the benefit* thereby gained for the correct disposal of litigation." (Emphasis in original.) 8 J. Wigmore, Evidence §2285, at 527 (McNaughton rev. ed. 1961).

The appellate court held that the claim of privilege failed to meet the first condition for a privilege: the communication did not originate in a confidence that it would not be disclosed. The appellate court relied principally upon *Couch v. United States* (1973), 409 U.S. 322, 34 L. Ed. 2d 548, 93 S. Ct. 611, which involved an investigation by the Internal Revenue Service (IRS) of a restaurateur's tax liability over a four-year period. The Court held that a taxpayer cannot on the ground of the fifth amendment privilege against compulsory self-incrimination avoid the production of business and tax records in the possession of the taxpayer's accountant. The Court also rejected the taxpayer's contention that the confidential nature of the accountant-client relationship protected, under the fourth and fifth amendments, the tax papers from disclosure. The Court stated:

"[N]o confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases [citations]. Nor is there justification for such a privilege where records relevant to income tax returns are involved in a criminal investigation or prosecution. *** [T]here can be little expectation of

privacy where records are handed to an accountant, knowing that mandatory disclosure of much of the information therein is required in an income tax return. What information is not disclosed is largely in the accountant's discretion, not petitioner's." *Couch,* 409 U.S. at 335, 34 L. Ed. 2d at 558, 93 S. Ct. at 619.

The attorney-client privilege has a similar confidentiality requirement as the statutory privilege here. It is intended to encourage clients to make full disclosures to their attorneys (8 J. Wigmore, Evidence §2291 (McNaughton rev. ed. 1961)), and is based upon the confidential nature of such communications (*People v. Williams* (1983), 97 Ill. 2d 252, 294, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364). The attorney-client privilege, however, does not extend to "[m]atters which the client intends his attorney to disclose to a third person." (*People v. Werhollick* (1970), 45 Ill. 2d 459, 462; *Dickerson v. Dickerson* (1926), 322 Ill. 492.) Federal courts have recognized this in determining that information given to an *attorney* to prepare a client's tax returns is not privileged, as it may be transmitted to a third party, via the completed tax returns. (See *Fisher v. United States* (1976), 425 U.S. 391, 48 L. Ed. 2d 39, 96 S. Ct. 1569 (tax documents in the possession of an attorney, which were sought by an IRS summons, are neither privileged in the hands of a lawyer nor of his clients); *United States v. Lawless* (7th Cir. 1983), 709 F.2d 485.) Also, an auditor's workpapers that were used to prepare a client's tax returns have been held subject to disclosure through an IRS summons. *United States v. Arthur Young & Co.* (1984), 465 U.S. 805, 79 L. Ed. 2d 826, 104 S. Ct. 1495 (the Court also specifically denied the notion that there is a "work product immunity" for independent auditors, similar to that recognized in attorney-client relationships).

A tax client provides information to his accountant with the understanding that there may be, at the accountant's discretion and judgment, a disclosure of it to a third party, the State, or other parties, *e.g.*, Federal and other taxing authorities. It is understood that confidentiality is not to attach to the information. Information given an accountant to prepare a client's tax returns and the accountant's workpapers in preparing the returns thus are not confidential. As the information and papers cannot be considered as obtained by the accountant in his confidential capacity, they are outside the scope of the section 27 privilege. If information called for is outside the scope of a statutory privilege, it is not protected from disclosure. *Richter v. Diamond* (1985), 108 Ill. 2d 265; see also *People v. Florendo* (1983), 95 Ill. 2d 155 (the statutory physician-patient privilege does not protect the patient's identity from disclosure sought under a grand jury subpoena); *Branzburg v. Hayes* (1972), 408 U.S. 665, 682, 33 L. Ed. 2d 626, 640, 92 S. Ct. 2646, 2657 (neither the first amendment nor any other constitutional provision protects a newspaper reporter from disclosing to a grand jury information that he had received in confidence).

Drebin, relying on *Church of Scientology v. Internal Revenue Service* (1987), 484 U.S. 9, 98 L. Ed. 2d 228, 108 S. Ct. 271, argues that the taxpayer's tax records are confidential. The State says in reply, and correctly we consider, that *Church of Scientology* holds only that removal by the IRS of the taxpayer's identification from a tax return does not render the tax return a document which must be disclosed under the Freedom of Information Act. Too, that decision, of course, did not involve a subpoena to produce tax documents in a criminal investigation, as we have here. The appellate court properly determined that the information and workpapers called for

by the grand jury subpoena are not privileged from disclosure.

Following the appellate court's decision, there was action in the General Assembly to amend section 27. The General Assembly approved Senate Bill No. 1009, to amend section 27, as follows:

"This privilege [provided in section 27] was intended to include but not be limited to any documents, information or evidence obtained or used in connection with any tax services performed by the public accountant." 85th Ill. Gen. Assem., Senate Bill 1009, 1987 Sess.

The Governor on September 24, 1987, exercised an amendatory veto as to the bill. The Governor stated in his amendatory veto message that the amendment "would prevent such material from being admitted into court proceedings regarding nonpayment of taxes, which would hinder the State's ability to successfully prosecute tax cheats." (Amendatory Veto Message, Sept. 24, 1987.) The Governor's amendatory veto message specifically recommended that section 27 be amended to provide that it would not be applicable to any act under which a State tax was imposed. (Amendatory Veto Message, Sept. 24, 1987.) A motion in the General Assembly to override the Governor's veto was defeated.

That the legislature did not override the Governor's veto and adopt the proposed amendment provides evidence that the legislature chose to accept the construction given the statute by the appellate court. (2A A. Sutherland, Statutory Construction §48.18, at 341 (4th ed. 1984).) The amendment was proposed in direct response to the appellate court's construction of the statute. (See 85th Ill. Gen. Assem., Senate Proceedings, October 22, 1987, at 83-84 (statements of Senator Savickas).) "Where action upon a statute or practical and contemporaneous interpretation has been called to the legislature's attention, there is more reason to re-

gard the failure of the legislature to change the interpretation as presumptive evidence of its correctness." 2A A. Sutherland, Statutory Construction §49.10, at 408 (4th ed. 1984); see also *Bell v. South Cook County Mosquito Abatement District* (1954), 3 Ill. 2d 353, 356.

While Drebin points to portions of the legislative debates to show that there were legislators who supported the amendment, the critical fact is that the amendment was defeated. "Generally the rejection of an amendment indicates that the legislature does not intend the bill to include the provisions embodied in the rejected amendment." 2A A. Sutherland, Statutory Construction §48.18, at 341 (4th ed. 1984); see also *Miller v. Lockett* (1983), 98 Ill. 2d 478, 483.

For the reasons stated, the judgment of the appellate court is vacated, and it is ordered that a writ of *mandamus* be issued directing the circuit court to vacate its order quashing the subpoena *duces tecum* and to conduct further proceedings as are appropriate.

*Writ awarded.*

JUSTICE STAMOS took no part in the consideration or decision of this case.

JUSTICE CLARK, dissenting:

Because a document entrusted to an accountant by his client for preparation of a tax return is the quintessential example of "information or evidence obtained by [the accountant] in his confidential capacity as a public accountant," I respectfully dissent.

The majority opinion, like the appellate court opinion below; goes astray because it answers questions that no one has asked, and does not ask those questions which truly need to be answered. We do not need to know, for example, whether tax-preparation materials enjoy a privilege under Federal law. Why? Because the statutes of

the United States, unlike those of Illinois, do not include an accountant-client privilege. (See *Couch v. United States* (1973), 409 U.S. 322, 34 L. Ed. 2d 548, 93 S. Ct. 611.) Therefore, the majority's citation of such cases as *Couch, Fisher v. United States* (1976), 425 U.S. 391, 48 L. Ed. 2d 39, 96 S. Ct. 1569, and *United States v. Lawless* (7th Cir. 1983), 709 F.2d 485, is beside the point. Cases originating in a jurisdiction which does not recognize an accountant-client privilege have no bearing on the scope of the privilege in a jurisdiction where the privilege has been enacted into law by the People's elected representatives. We also do not need to know whether the accountant-client privilege meets the four conditions proposed by Dean Wigmore as necessary for the *establishment* or *recognition* of a new privilege. This is because the privilege has already been established by the legislature; further inquiry into its wisdom or desirability is not within our province.

We thus come to the question really posed by this case: whether information given to an accountant for the preparation of a tax return falls within the scope of a privilege which, by definition, includes information or evidence given to an accountant in his "confidential capacity as a public accountant."

The interpretation of the scope of information obtained in a "confidential capacity as a public accountant" must depend, in turn, upon the legislature's purpose. While the legislative history of this 43-year-old statute is admittedly sparse, the actual wording of the statute indicates that it was intended to be broadly and generously construed. Unlike the accountant privileges of other States (see, *e.g., Dixon v. Bennett* (1987), 72 Md. App. 620, 531 A.2d 1318), the privilege applies to any "court," and does not contain any exception for criminal or bankruptcy matters. As the appellate court below acknowledged, the privilege is so worded as to confer the

privilege upon the accountant, as well as the client. (See *Baylor v. Mading-Dugan Drug Co.* (N.D. Ill. 1972), 57 F.R.D. 509.) The breadth of the privilege indicates that it was intended not only to encourage "full and honest disclosure" (154 Ill. App. 3d at 294) by the client, but also nondisclosure of the client's confidences by the accountant. (See 1 AICPA Professional Standards (CCH) §52 (1984) (American Institute of Certified Public Accountant's Code of Professional Ethics).) And while we need not reexamine the policy basis of the privilege in order to carry out the legislative intent, it is worth noting the empirical evidence that business executives generally expect communications with their accountants will be kept in confidence, and their belief that the lack of a privilege hampers full and frank disclosure. See Smith, *Do Executives Believe They Have a Right to Privileged Communications with Their CPAs*, 19 Mid-Atlantic J. of Bus. 15, 19 (1981).

If society has an interest in protecting accountant-client relationships in general, and in encouraging people to make use of professional accounting services, I see no reason why this interest does not extend to the use of professional accountants to prepare tax returns. Indeed, the vast majority of people only use the services of an accountant in this connection. In the absence of clear statutory language which excepts tax information from the privilege, I cannot agree that we can write such language in. Such an interpretation smacks of judicial legislation.

I can agree with the majority that the accountant-client privilege, like other professional privileges, only protects "confidential" information. Where a client or patient volunteers information in the presence of a third party, or gives information which he knows that a professional is bound to disclose, a privilege is waived. And I agree that some of the information given the clients in

this case, to the extent that it was actually disclosed upon their return, was not confidential. But I cannot also agree that all information, or, more pertinently, all the documents which contain such information, can similarly be considered waived.

Finally, I do not consider the attempted passage of a subsequent amendment to the statute to have any bearing on the question before us. I have often repeated the arguments against use of subsequent legislative action or inaction as a guide to the intent of an earlier legislature, and will not rehearse them once again. (See *People v. Hicks* (1987), 119 Ill. 2d 29, 35 (Clark, C.J., dissenting).) Here the legislature acted in direct response to the appellate court opinion below, the validity of which is at issue. Had the legislature not acted, the majority would no doubt have argued that the lack of action indicated the legislature's approval. On the other hand, successful passage of the amendment could have been interpreted as a substantive prospective change in the law supporting the interpretation of the prior statute adopted by the appellate court. In other words, an amendment, an unsuccessful amendment, and no amendment would all have the same effect. Each would be taken as ratifying the appellate court decision. The principle seems to be: heads, I win; tails, you lose. If we were to apply such reasoning consistently, the appellate court's statutory interpretations would be final, and we would have abdicated our role as the ultimate arbiter of Illinois law. Subsequent legislative action, whatever its outcome, should not affect our decision.

I must therefore respectfully dissent.