In re **GRABILL CORPORATION, Camdon Companies, Inc., Foxxford Group, Ltd., The Techna Group, Ltd., Windsor–Hamilton, Ltd.,**

In re **William J. STOECKER.**

Nos. 89 C 4512, 89 C 4518.

United States District Court,
N.D. Illinois, E.D.

Nov. 17, 1989.

Roger B. Harris, Kenneth R. Gaines, Benjamin D. Schwartz, Altheimer & Gray, Chicago, Ill., for Laventhol & Horwath.

Jay A. Steinberg, Michael B. Solow, Hopkins & Sutter, Chicago, Ill., for Grabill Corp. et al.

Rudnick & Wolfe, Chicago, Ill., for William J. Stoecker.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

These consolidated matters are before us on appeal from the United States Bankruptcy Court for the Northern District of Illinois. At issue is whether the bankruptcy court erred in determining that a state-created accountant privilege does not apply in a federal bankruptcy proceeding to prohibit disclosure of accountants' work papers and documents concerning its audits of a debtor where those documents are sought in connection with resolving "traditional questions of federal bankruptcy law." Also, notwithstanding the privilege issue, we have been asked to determine whether the bankruptcy court erred in finding that the creditors demonstrated a proper need for direct access to the documents and sought the documents for a proper purpose. For the reasons set forth below we affirm the decision of the bankruptcy court.

### Background

The debtors in this matter are William J. Stoecker and Grabill Corporation and four of its wholly-owned subsidiaries. Stoecker is the sole shareholder of Grabill and a former chief operating officer of the other corporate debtors.

The appellant, Laventhol & Horwath ("Laventhol"), served as the debtors' accountants and prepared audited financial statements for the corporate debtors in 1987 and 1988. Laventhol also reviewed the personal financial statements of William J. Stoecker in 1987 and 1988. The appellees are numerous creditor banks ("Banks") of the debtors: Connecticut Bank and Trust Company, N.A., Australia and New Zealand Banking Group, Ex-

change National Bank, LaSalle National Bank, Manufacturers National Bank of Detroit, National Bank of Detroit, Harris Trust and Savings Bank, and Citibank, N.A.

Laventhol has appealed two substantively identical Orders issued by Judge Squires on June 2, 1989 in the bankruptcy proceedings *In re William J. Stoecker*, Case No. 89 B 02873 and *In re Grabill Corporation et al.*, Cases No. 89 B 1639–1643. The Orders granted the Banks direct access to work papers and documents that Laventhol had earlier agreed to produce to the two bankruptcy trustees under identical protective orders. The general events leading up to Judge Squires' ruling are as follows.

Laventhol had produced over 20,000 pages of its documents to the trustees in response to a Rule 2004 subpoena and subject to the identical protective orders. Although the protective orders had provided that the trustees were to hold the documents "in confidence," that provision was qualified by the statement that the protective order was not to "restrict the Trustee's use of the information contained in the Laventhol & Horwath documents to carry out his duties." Those duties included the trustees' obligation under section 704(7) of the Bankruptcy Code to "furnish such information concerning the estate and the estate's administration as is requested by a party in interest," unless the court orders otherwise. That qualification, however, resulted in some confusion regarding what information the trustees could disclose to the Banks upon their request without violating the protective orders. Consequently, the Banks moved for modification of the protective orders to enable them, under section 704(7), to gain access to the estate information, including the actual documents, now in the hands of the trustees.

One of the trustees also moved for clarification of the protective orders.

During the proceedings that followed, Laventhol maintained that the protective orders were not meant to restrict the trustees' duty to share with the Banks all of the information (i.e. contents) of Laventhol's work papers that might be relevant to the estate and its administration. Laventhol agreed that the trustees may describe the documents, summarize their contents, or even read or transcribe word by word from individual documents. (See Trans. of Hearing at 22). The only matter that Laventhol had sought to foreclose under the protective orders was the Banks' direct access to the actual documents.[1]

Apparently surprised by Laventhol's position, the Grabill Trustee then joined in the Banks' motion for modification of the protective orders on the ground that the disclosure provisions of the protective order, as characterized by Laventhol, are unworkable and unnecessarily expensive to estate. Finding that the Banks had demonstrated a "compelling need for disclosure," and finding the state privilege inapplicable to discovery of documents that are relevant to resolution of fundamental federal bankruptcy questions, Judge Squires ordered the disclosure of the documents to the Banks.

While this appeal was pending, we remanded a motion by the Grabill Trustee to clarify the protective order in light of Laventhol's concessions. In an Order dated September 22, 1989, Judge Squires accommodated Laventhol's pending claim of privilege while allowing for access to information and documents clearly not subject to the privilege. In addition to allowing disclosure of information derived from the documents which specifies matters relating

---

**1.** Laventhol's position only adds to the confusion concerning what matter is or is not subject to the protective order. Laventhol's position is inconsistent with paragraph 4 of the protective order, which provides that:

> In the event that Trustee is served with any subpoena or other discovery by anyone other than a federal government agency acting in a law enforcement capacity that seeks the production of any of the Laventhol & Horwath

> Documents or *any of the information contained therein,* Trustee will prior to production give reasonable notice under circumstances to counsel for Laventhol & Horwath to permit it to seek any appropriate relief. (emphasis added).

We suppose, therefore, that Laventhol's position essentially should be regarded as an attempt to reconcile the inconsistency by consenting to the disclosure of the contents of the documents.

to the assets, transfer of assets, and liability of the debtor, Judge Squires also clarified the Protective Order as allowing for disclosure of documents received by Laventhol from other parties, documents other than Laventhol's own tangible work product which contain information obtained by Laventhol from other parties to the extent of such information, and documents other than work product and information that the trustee believes would support claims or causes of action which the trustee believes the estates have against Laventhol. Laventhol has not contested this Order. Nevertheless, the parties have represented that no such disclosures have yet been made pending the outcome of this appeal.

## Analysis

■ On June 2, 1989, Judge Squires announced his findings of fact and conclusions of law in a lengthy and detailed oral opinion, given after a full briefing of the issues by the parties, and after all interested parties had an opportunity to present oral arguments. We have thoroughly reviewed Judge Squires' findings and have fully re-evaluated, *de novo*, the legal issues presented to him and the authority upon which he relied in making his conclusions of law. Based on that review, we see no basis for disturbing Judge Squires' findings and we are in complete agreement with his reasoning that supported the legal conclusion that the state-created accountant privilege does not bar disclosure of the documents to the Banks. Accordingly, seeing little room to improve upon Judge Squires' opinion, we adopt it as our own, and make only a few additional points in further support of affirmance.

■ The only aspect of Judge Squires' opinion with which we disagree is his conclusion that, given the history of the proceedings, Laventhol had not effectively waived the accountant's privilege. Laventhol may have properly preserved its claim of privilege when it initially negotiated and formulated the protective orders. How-

ever, we find that Laventhol's subsequent position in trying to reconcile the trustees' duty under section 704(7) with the confidentiality restrictions of the protective orders amounted to a concession constituting waiver of the privilege at least to the extent of documents containing information which Laventhol agreed the trustees may disclose.

In its most recent consideration of the Illinois statute that created the accountant's privilege, the Illinois Supreme Court stated

The statute, in specifying that the evidence obtained by an accountant in his "confidential capacity" is protected, shows that the legislative intent was that the privilege extend only to information or evidence received by an accountant in confidence from the client. *In re October 1985 Grand Jury No. 746*, 124 Ill.2d 466, 474 [125 Ill.Dec. 295, 298–99,] 530 N.E.2d 453, 456–57.

We are concerned here with "information" communicated via 20,000 documents—"evidence"—and received by Laventhol in confidence from the debtors. Laventhol has expressly consented to an order permitting the trustees to disclose estate information (i.e. contents) contained in the documents with the Banks; it has claimed the privilege only to prohibit disclosure of the documents themselves. (Laventhol's Br. at 29; Reply at 2, 10, 15, 19 n. 8, 20). Because Laventhol has agreed to disclosure of the information contained in the documents, however, that information is no longer confidential. If the information is no longer confidential, we see no basis for the Laventhol's assertion that the instruments by which the information was communicated remain clothed with confidentiality. And since there is no confidence to protect by prohibiting disclosure of the documents, even if the privilege had been found applicable in these proceedings, it has been waived.[2]

---

2. We further mention that we are not certain that the Illinois accountant's privilege would even have been applicable in state proceedings to prohibit disclosure of the documentary communications and work papers relating to Laven-

thol's preparation of the audited financial statements. If the debtors intended or contemplated that the financial statements would be disclosed to third parties, then it appears that Laventhol's claim of privilege would have failed to meet the

Laventhol does not directly confront this point, but persists in its basic assertion that the privilege may be invoked to prohibit access to the actual documents, even though access to the confidential information in the documents has already been secured. On a theory of partial waiver, such a distinction might have merit, but only if there is something characteristic of the actual documents, as opposed to the information they contain, that provides an independent basis of confidentiality. In its brief and reply, however, Laventhol has offered no independent basis of confidentiality for the actual documents, nor can we discern any.

Furthermore, the crux of this dispute has nothing to do with a tortured distinction between confidential information and confidential documents. Rather, it concerns what estate information the Trustee must disclose to the Banks under 704(7) and what information may be withheld for any reason. This is evident from Laventhol's line of argument at the hearing before Judge Squires which raised the fact that the documents contained certain proprietary information belonging to Laventhol, such as an audit plan which tells how the auditor planned to go about doing the audit. (Tr. at 19). Further, Laventhol contended that the work papers dealt with many matters other than those contemplated by section 704(7) as relevant to estate and the estate's administrations. (Tr. at 22). And in the proceedings regarding

clarification of the protective orders, Laventhol contested that the protective orders authorize the trustees, when contested that the protective orders authorize the trustees, when providing information concerning the estate, to inform creditors of the work performed by Laventhol as accountants for the debtors and the procedures employed by Laventhol in auditing the financial statements of the debtors as to such assets.

Regarding all of this proprietary material and the question of privilege, the *Grand Jury* decision made clear that an accountant may only assert the privilege to prohibit disclosure of confidential communications between the client and the accountant. Thus, the privilege does not protect proprietary materials relating solely to the accountant's own methods of operation and administration of the account. Documents in the hands of the trustees that do not relate to confidential matters of the debtors, but are nonetheless relevant to the estate, are subject to other safeguards of discovery. Indeed, section 704(7) provides for circumstances in which a party may wish to restrict disclosure of information upon an order by the court. And, in fact, as Judge Squires made clear (Tr. at 51), nothing now prevents Laventhol from taking steps via a protective order to reasonably limit the extent to which any sensitive or proprietary information gleaned from the documents may be disseminated or made public by the Banks.

first condition for a privilege under Illinois law: the communication did not originate in a confidence that it would not be disclosed. *In re October 1985 Grand Jury No. 746*, 124 Ill.2d 466, 475, 125 Ill.Dec. 295, 299, 530 N.E.2d 453, 457 (1988). In *Grand Jury,* an accountant claimed the privilege in order to avoid compliance with a subpoena *duces tecum* served upon him in the course of a grand jury investigation of his tax clients. The subpoena called for the production not only of all retained copies of the tax returns he prepared for his clients, but also all written material provided by the clients for use in the preparation of the returns, and all work sheets prepared by the accountant. The court held that the privilege did not apply to any of these documents. The court reasoned:

A tax client provides information to his accountant with the understanding that there may be, at the accountant's discretion and

judgment, a disclosure of it to a third party, the State, or other parties, *e.g.,* Federal and other taxing authorities. It is understood that confidentiality is not to attach to this information. Information given an accountant to prepare a client's tax returns and the accountant's work papers in preparing the returns thus are not confidential. If information called for is outside the scope of a statutory privilege, it is not protected from disclosure. *Id.* at 477, 125 Ill.Dec. at 300, 530 N.E.2d at 458 (citations omitted). The same reasoning would apply to the preparation of an audited financial statement, if in fact the client contemplated that the statement might be made public in some respect. The record here, however, does not reveal whether the financial statements were prepared for solely private use or for potential public disclosure. Thus, we make no finding on this point.

■ What remains, therefore, are those documents that allegedly contain confidential information (though not privileged for bankruptcy purposes) having nothing to do with matters pertaining to the estate or the estate's administration. We, like Judge Squires (see Tr. at 45), recognize that the touchstone for the scope of discovery in bankruptcy proceedings is relevancy under Federal Rule of Civil Procedure 26, echoed in Federal Rule of Evidence 402. The Banks have not contended otherwise. All they seek is access to documents that are relevant to resolution of the bankruptcy question and claims delineated by Judge Squires. As Judge Squires noted, however, until the parties "can see the documents themselves, how does an interested party know what may be there that may be important on these bankruptcy issues in this case or these cases at this time." (Tr. at 50–51). We agree. We find that the Banks' access to all of the documents already made available to the trustees is warranted and poses little harm to Laventhol. Obviously, irrelevant documents would have no utility in any proceedings concerning the estate and its administration in federal bankruptcy court. And a protective order can be fashioned to preclude the Banks from making the confidential information public to other parties. It is possible that certain documents may be so sensitive and so irrelevant for bankruptcy purposes that a prohibition against disclosure might be justified in the interests of justice. Laventhol, however, has asserted no such claim as to any of the documents, and the existence of such a claim is highly unlikely in this case, since Laventhol has already disclosed the documents to the trustees.

Leaving aside the privilege issue, we briefly consider Laventhol's other attacks on Judge Squires' ruling. Laventhol contends that Judge Squires' ruling was without legal basis. The Banks have asserted their right to the actual documents under section 704(7) of the Bankruptcy Code. Laventhol has conceded that the information contained in the documents may properly be the subject of a section 704(7) request. And in light of our discussion above, we see no reason to distinguish in this case between the information contained in the documents and the documents themselves if, in the interests of justice and economy, it makes sense to permit a trustee to furnish information by providing access to source documents. Laventhol has further argued, however, that the Banks' motion is, in effect, an attempt to obtain discovery of documents from a third-party as though pursuant to a subpoena issued under Bankruptcy Rule 2004. At the hearing before Judge Squires, Laventhol expressed a willingness to ignore any procedural infirmities and to have Judge Squires consider the motion as if it were a motion under 2004. Rule 2004 unquestionably provides for the discovery of *documents*. *See* 11 U.S.C. § 2004(c). Thus, two legal bases support the Banks' motion.

■ Laventhol then argues that Judge Squires failed to require the Banks to show "good cause" for obtaining the requested discovery. "Good cause" is the standard employed under Rule 2004. Under that standard, the movant must show "some reasonable basis to examine the material ... [and] that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice." *Matter of Wilcher*, 56 B.R. 428, 434–35 (Bankr.N.D. Ill.1985). Assuming without deciding that "good cause" is the appropriate standard to apply to the Banks' motion,[3] we note first that Judge Squires expressly considered the Banks' motion under that standard. (*See* Tr. at 42). Further, we believe that Judge Squires' findings satisfied that standard and are amply supported by the record. Among those findings Judge Squires noted the "logistical difficulties, if not functionally practical impossibility of summarizing all of these documents." (Tr. at 41). Judge Squires referred to the fact that because it is evident that there are

---

**3.** Since section 704(7) is as likely a basis for disclosure of the documents now that they are in the hands of the trustees, the appropriate standard may be something other than "good cause" as defined in the *Wilcher* case.

missing assets, a review of the documents might unearth copies of missing documents from the corporate debtors' estates. (Tr. at 42). He further found that the work papers will provide a showing as to the debtors' accounting systems, a description of the audit plan and program, and show the results relative to what audit work was done by Laventhol. (Tr. at 42). Judge Squires found that such a firsthand review by the Banks may lead to discovery of additional assets and information. He further pointed to the fact that "because many of the corporate debtors' principle officers and personnel have claimed their Fifth Amendment privileges, normal avenues of discovery have been foreclosed at this stage of the proceeding." (Tr. at 43–44). Judge Squires then discussed the legitimate federal bankruptcy interests of the Banks in obtaining evidence and information in order to make informal decisions about what action they should take to protect their interests. He further discussed the policies promoted by disclosure of the documents to the Banks. In light of all these facts and findings, and those we have not chronicled here, Judge Squires was correct in holding that the Banks had made a proper showing of need for access to the documents.

### Conclusion

We affirm the decision of the bankruptcy court and remand these matters to Judge Squires for proceedings consistent with his opinion, which required the parties to propose a protective order that would restrict the dissemination of the allegedly sensitive and proprietary information to third parties or nonmovants. (Tr. at 51–52). It is so ordered.